WESTERN SYSTEMS, INC.; Lee M.
Holmes, Plaintiffs–Appellees,

v.

Richard F. ULLOA; David J. Ulloa,
Defendants–Appellants.

Nos. 90–15732, 91–15110.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 8, 1991.

Decided March 4, 1992.

As Amended June 23, 1992.

Myles T. Yamamoto, Love & Yamamoto, Honolulu, Hawaii, for Richard Ulloa.

Mark Snyder Holmes, Gana, Guam, Vernon F.L. Char, Char, Sakamoto, Ishii & Lum, Michael J. Yashii, Honolulu, Hawaii, for Western Systems, Inc.

Before ALARCON, D.W. NELSON and CANBY, Circuit Judges.

D.W. NELSON, Circuit Judge:

Western Systems and the Ulloas (David and Richard) filed suits against each other in the United States District Court in Guam in 1972. The suits concerned in part the validity of an agreement giving the Ulloas some rights to ownership of stock in Western Systems. Western Systems prevailed in both suits. Western's efforts to collect its judgment from the Ulloas continued until 1989, when the federal court litigation was finally concluded by settlement. These cases were the subject of no less than four appeals to the Ninth Circuit. The same day the federal cases settled, the Ulloas filed two suits in Guam Superior Court, alleging claims closely related to those litigated in the 1972 federal suit. Western sought and obtained a federal court injunction prohibiting the Ulloas from proceeding with the territorial court actions. Western was also awarded sanctions by the district court. The Ulloas appeal both rulings. We affirm both the injunction and the award of sanctions, but remand the amount of the sanction to the district court for reconsideration.

## FACTUAL AND PROCEDURAL BACKGROUND

This appeal is the latest sortie in nineteen years of shareholder litigation over the Guam cable television corporation, now called Western Systems, Inc. The facts are long, involved, and only somewhat relevant to the current appeal. The Ulloas founded Western's predecessor company (MCS), which soon ran into financial trouble. The Ulloas sold their interests to the Guam Economic Development Authority (GEDA) for $1 each on May 21, 1971. Under this agreement, GEDA assumed MCS's debts, agreed not to sell the company for 180 days, and gave the Ulloas a right of first refusal of stock GEDA wished to sell.

GEDA found a buyer for MCS within the 180 day period. Because the May 21 Agreement prevented it from selling the company during this period, GEDA entered into two Agreements with the Ulloas, on July 20, 1971 and August 4, 1971, which superseded the May 21 Agreement. Under

these Agreements, appellee Holmes bought 70% of the MCS stock. Holmes remains the majority shareholder of Western today. The Agreements also gave the Ulloas and other original shareholders two rights. First, they could buy their pro rata share of 15% of the stock for $1 per share (the "¶ 2 Option"). Second, five individuals (including David Ulloa) could buy another 3% of the stock each, at $4 per share, once MCS had paid its debts to GEDA (the "¶ 3 Option"). All parties to this appeal were parties to these agreements.

In 1971, David Ulloa exercised both his and Richard Ulloa's rights under ¶ 2. However, the Ulloas failed to pay for their stock, and MCS cancelled their subscription in 1972 pursuant to the terms of the Agreement.

On February 28, 1972, the Ulloas filed suit against GEDA and Holmes, seeking to cancel the August 4 Agreement and to have all MCS stock returned to them. This was case number 24–72. On November 28, 1972, GEDA, Holmes, and MCS sued the Ulloas, claiming that they had issued watered stock to themselves during the time they controlled MCS. This was case number 197–72. The District Court decided against the Ulloas in both cases in 1977. We affirmed both decisions. *See Guam Economic Development Authority v. Ulloa*, 628 F.2d 1356 (9th Cir.1980) (197–72); *Ulloa v. Guam Economic Development Authority*, 580 F.2d 952 (9th Cir.1978) (24–72).

As a result of these decisions, Holmes, GEDA and MCS were awarded a $189,000 judgment against the Ulloas for watered stock.[1] After the Ulloas failed to pay, the district court issued a writ of execution on March 27, 1979. Pursuant to that writ, the federal marshal levied "any and all contract rights" David Ulloa had pursuant to the August 4 agreement. These rights were sold (to Holmes) at a judicial sale on April 12, 1979. David Ulloa did not appeal the execution, levy, or sale. Further ef-

forts to enforce the judgment continued until 1989.[2]

On December 5, 1989, the parties settled the claim against the Ulloas for $238,000. That same day, the Ulloas filed two suits in Guam Superior Court against Western Systems. The first, CV 1223–89, seeks rights to 30% of MCS (now Western) stock pursuant to the August 4, 1971 agreement. The second, CV 1224–89, asks the Guam Superior Court to declare "null and void" the March 27, 1979 federal court order of execution, levy and sale of David Ulloa's contract rights.

Western and Holmes promptly filed a petition in the United States District Court seeking to enjoin the Guam court suits. The district court granted the injunction, and in addition awarded $28,117.06 in fees and costs to Western as sanctions for the Ulloas' bad faith in filing the lawsuits. The Ulloas appealed the injunction (90–15732) and the sanctions (91–15110). These appeals are consolidated before this Court.

## STANDARD OF REVIEW

District court injunctions are normally reviewed only for an abuse of discretion. *Multnomah Legal Serv. Workers Union v. Legal Services Corp.*, 936 F.2d 1547, 1552 (9th Cir.1991). However, applying an erroneous legal standard is an abuse of discretion. *Golden v. Pacific Maritime Ass'n*, 786 F.2d 1425, 1426–27 (9th Cir. 1986), *as amended*, 40 Fair Emp.Prac. Cases (BNA) 1500, 1501 (9th Cir.1986). The question whether the district court had the power to issue the injunction is therefore reviewed de novo, while its decision to exercise that power is reviewed for an abuse of discretion. *See Lou v. Belzberg*, 834 F.2d 730, 733–34 (9th Cir.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988).

Similarly, "an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." *Cooter & Gell*

---

1. Postjudgment interest had increased that figure to over $300,000 by 1989.

2. We held that Western Systems could continue to enforce the judgment in *Guam Economic Development Authority v. Ulloa*, 841 F.2d 990 (9th Cir.1988).

*Co. v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990). Failure to apply a correct legal standard constitutes an abuse of discretion. *Id.*

## DISCUSSION

### 1. The Relitigation Exception to the Anti–Injunction Act

The two suits filed in Guam territorial court sought three basic kinds of relief. First, both David and Richard Ulloa claimed that they should have been offered the stock of other MCS shareholders who did not exercise their rights under ¶ 2 of the August 4, 1971 Agreement.[3] Second, David Ulloa claims that he should have been offered 3% of MCS stock pursuant to ¶ 3 when MCS repaid its debt to GEDA in full.[4] Finally, David Ulloa seeks to have the Guam Superior Court declare "null and void" the federal court execution, levy and sale of "any and all contract rights" he possessed by virtue of the August 4 Agreement.

■ The Anti–Injunction Act, 28 U.S.C. § 2283, provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The Act reflects fundamental principles of equity, comity, and federalism which normally counsel against federal interference with state judicial proceedings.[5] Exceptions to the Act are to be strictly construed. *Choo v. Exxon Corp.*, 486 U.S. 140, 146, 108 S.Ct. 1684, 1689, 100 L.Ed.2d 127 (1988).

■ The key exception in this case is the final one, authorizing a federal court to issue injunctions "to protect or effectuate its judgments" (the "relitigation exception"). The parties do vigorous battle over the scope of this exception. Western contends that the exception applies whenever res judicata would bar relitigation of a claim. Res judicata bars both claims actually litigated and those that arise from the same transaction and *could have been* litigated in a prior proceeding. Restatement (Second) Judgments § 24(1). The Ulloas, on the other hand, argue that section 2283 allows federal courts to enjoin relitigation only of issues *actually litigated* in the federal proceeding. The Supreme Court has in the past expressly refused to decide this question. *See Parsons Steel v. First Alabama Bank*, 474 U.S. 518, 526 n. 4, 106 S.Ct. 768, 773 n. 4, 88 L.Ed.2d 877 (1986).

■ David Ulloa asked the Guam court to declare the federal order "null and void." State courts have no power to void federal court decrees. A federal court may enjoin such impermissible collateral attacks on federal judgments. *See Williams Natural Gas Co. v. Oklahoma City*, 890 F.2d 255, 264 (10th Cir.1989) (error *not* to enjoin collateral attack by state court on the validity of federal judgment), *cert. denied*, —— U.S. ——, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990). Whether the standard is res judicata or "issues actually litigated", therefore, the district court was correct to enjoin David Ulloa's claims. They have actually

---

**3.** Paragraph 2 provides: "In the event that any of the shareholders indicates that he does not desire to purchase the shares or should default in payment, then such shares will be offered to the remaining former stockholders on the above pro rata basis."

**4.** Paragraph 3 provides: "The remaining 15% of the stock of MCS held by GEDA shall be made available for sale to [David Ulloa, Holmes, and 3 others], in equal proportions, ... provided how-

ever, that the said shares shall not be so made available until the MCS debt to GEDA ... is repaid in full."

**5.** Guam is not a state. However, the principles of federalism which underlie federal-state judicial relations apply equally to federal-Guamanian relations. 48 U.S.C. § 1424–2; *Guam v. Yang*, 850 F.2d 507, 510 (9th Cir.1988) (en banc).

been litigated and decided in federal court.[6]

The same cannot be said, though, of Richard Ulloa's claim to refusal rights (and for fraud) under ¶ 2. While Western notes that the Ulloas obtained the stock ledger and other corporate records during discovery in case no. 197–72, and thus knew of their refusal rights and *could* have raised them, Richard Ulloa's refusal rights were not "issues ... actually litigated" in either case no. 24–72 or 197–72.[7] The validity of the injunction against his claims therefore depends on whether res judicata or "issues ... actually litigated" is the proper standard for applying the relitigation exception to section 2283.

For years the prevailing rule in the Ninth Circuit and elsewhere has been that section 2283 does not prohibit injunctions against any claim that would be barred by res judicata in federal court. *See DeNardo v. Murphy,* 781 F.2d 1345, 1348 (9th Cir.), *cert. denied,* 476 U.S. 1111, 106 S.Ct. 1962, 90 L.Ed.2d 648 (1986); *Midkiff v. Tom,* 725 F.2d 502, 504 (9th Cir.1984) ("Federal courts may enjoin state court proceedings in order to protect the res judicata effect of their own judgments."), *rev'd on other grounds sub nom. Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).[8] While this court has sometimes required a "strong and unequivocal showing of relitigation" before applying section 2283, *see Bechtel*

*Petroleum v. Webster,* 796 F.2d 252, 253–54 (9th Cir.1986), *cert. dismissed,* 481 U.S. 1065, 107 S.Ct. 2455, 95 L.Ed.2d 864 (1987), as a rule we have applied the exception as long as defendants had a full and fair *opportunity* to litigate the issue in the prior proceeding. *Golden v. Pacific Maritime Assn.,* 786 F.2d at 1427–28.

The continuing vitality of this rule was thrown into doubt by the Supreme Court's 1988 decision in *Choo v. Exxon Corp.,* 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). In *Choo,* a federal court in Texas had dismissed an admiralty claim on forum non conveniens grounds, concluding that Singapore was the appropriate place to file suit. When the plaintiffs refiled in Texas state court, the federal court enjoined the action. The Supreme Court reversed, reasoning that Texas state courts might apply different forum non conveniens rules than do the federal courts. *Id.* at 148–49. In dictum,[9] the Court said that "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court. Moreover, ... this prerequisite is strict and narrow." *Id.* at 148.

In the wake of *Choo,* five circuits have concluded that the relitigation exception is now limited to issues actually litigated by

---

**6.** For similar reasons, we reject appellants' attempts to relitigate the levy and sale here by asserting that a court cannot levy contract rights under Guam law. Appellants had an opportunity to object to the levy in 1979, but failed to do so. They cannot raise the issue 12 years later, in federal or territorial court. *See Sidney v. Zah,* 718 F.2d 1453, 1457 (9th Cir.1983) ("The Tribe did not appeal the 1980 ruling. Thus, the merits of the 1980 injunction cannot be challenged in this appeal...").

**7.** The district court in case no. 24–72 also held that the Ulloas would be barred by unclean hands and estoppel from seeking to have a constructive trust imposed on MCS for the entire value of the corporation. These equitable doctrines were not and could not be used to bar a suit for damages for breach of contract.

**8.** *Accord Silcox v. United Trucking Serv.,* 687 F.2d 848, 851–52 (6th Cir.1982); *CCMS Pub. Co. v. Dooley-Maloof, Inc.,* 645 F.2d 33, 38 (10th Cir.1981); *Browning Debenture Holders Comm. v. DASA Corp.,* 605 F.2d 35, 38–39 (2nd Cir. 1978); *Samuel C. Ennis & Co. v. Woodmar Realty Co.,* 542 F.2d 45, 49 (7th Cir.1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977); *BGW Assoc. v. Valley Broadcasting Co.,* 532 F.Supp. 1115, 1117 (S.D.N.Y.1982). *Contra Delta Air Lines v. McCoy Restaurants,* 708 F.2d 582, 586 (11th Cir.1983).

**9.** In the case before the Supreme Court, the parties *could not have* litigated the Texas state rules of forum non conveniens in federal court. The question this court faces was therefore not before the Supreme Court.

the federal court. *See In re G.S.F. Corp.,* 938 F.2d 1467, 1478 (1st Cir.1991) (applying section 2283 principles by analogy to bankruptcy case); *Farias v. Bexar County Board of Trustees,* 925 F.2d 866, 879–80 (5th Cir.) ("under *Chick Kam Choo,* what looks like the same rodeo in a different arena is really a different rodeo for relitigation exception purposes"), *cert. denied,* —— U.S. ——, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991); *LCS Serv. v. Hamrick,* 925 F.2d 745, 749–50 (4th Cir.1991) (scope of section 2283 is less than res judicata; court does not mention "actually litigated" test); *American Town Center v. Hall 83 Associates,* 912 F.2d 104, 112 n. 2 (6th Cir.1990); *Nationwide Mut. Ins. Co. v. Burke,* 897 F.2d 734, 737–38 (4th Cir.1990); *Staffer v. Bouchard Transp. Co.,* 878 F.2d 638, 642–44 (2nd Cir.1989); *De Cosme v. Sea Containers, Ltd.,* 874 F.2d 66, 68 (1st Cir.1989); *Murray v. Nat'l Broadcasting Co.,* 718 F.Supp. 249, 251 (S.D.N.Y.1989) (enjoining only those claims that were actually litigated).

This court has considered the impact of *Choo* only once, in *Zipfel v. Halliburton Co.,* 861 F.2d 565, 568–70 (9th Cir.1988) (*Zipfel II* ). *Zipfel II* was a close factual analogue to *Choo.* We had decided before *Choo* that a federal court could not enjoin state proceedings on forum non conveniens grounds, since the state might apply a different law of forum non conveniens and defendants would have no opportunity to argue it. *See Zipfel v. Halliburton Co.,* 832 F.2d 1477, 1488 (9th Cir.1988), *cert. denied,* 486 U.S. 1054, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988) (*Zipfel I*). *Choo* reached the same conclusion.

After *Choo* was decided, this court recalled the mandate in *Zipfel I.* We issued a revised opinion in which we *broadened*

the scope of the injunction permissible under section 2283. We read *Choo* as holding an injunction permissible where a prior federal decision "necessarily precludes" a certain result, even if that result was not itself actually litigated. *Zipfel II,* 861 F.2d at 570. *Zipfel II* did not directly decide, however, whether *Choo* limited the scope of the relitigation exception to claims actually litigated in federal court. We face that question here for the first time.[10]

■ We disagree with those Circuits which have concluded that the relitigation exception is limited to issues "actually litigated" in a prior court proceeding. As the Supreme Court noted in *Choo,* the relitigation exception is "founded in the well-recognized concepts of *res judicata* and collateral estoppel." 486 U.S. at 147, 108 S.Ct. at 1690. To read *Choo* as the other Circuits have, however, would in essence be to read res judicata entirely out of section 2283. Any issue which was "actually litigated" by the parties in a prior proceeding will be barred by collateral estoppel ("issue preclusion"), without any need to rely on res judicata ("claim preclusion"). This result seems to us to be contrary to the purposes of section 2283, as stated by the Supreme Court in *Choo.* It is also contrary to the language of *Choo,* which would bar relitigation of *"claims or* issues [that] actually have been decided." 486 U.S. at 148, 108 S.Ct. at 1690.

We are therefore in agreement with Wright, Miller and Cooper. Criticizing the Second Circuit's reading of *Choo* in *Staffer,* they said:

This decision seems unduly restrictive. The Chick Kam Choo opinion is ambiguous and does not show that a distinction between claim preclusion and issue pre-

---

**10.** Two other cases have touched on this issue, but neither case resolved it. In *Merle Norman Cosmetics, Inc. v. Victa,* 936 F.2d 466, 468 (9th Cir.1991), we found it unnecessary to decide whether *Choo* limited the scope of the relitigation exception because we found that the district court was within its discretion in refusing to grant an injunction, regardless of the appropriate legal standard. And in *Amwest Mortgage Corp. v. Grady,* 925 F.2d 1162, 1164–65 (9th Cir.1991), we relied on pre-*Choo* cases in concluding that the relitigation exception extended to all claims which the defendant had a "full and fair opportunity" to litigate. However, *Amwest* did not cite or discuss *Choo.*

clusion was really considered or intended. If the effects of a judgment are to be enforced by injunction, claim preclusion is often as good a candidate as is issue preclusion. Indeed the Staffer case involves nonmutual issue preclusion and seems a weaker candidate for an injunction than many claim preclusion cases would be.

17 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4226, at 48 n. 12.1 (1991 Supp.). *See also Royal Ins. Co. of America v. Quinn–L Capital Corp.,* 759 F.Supp. 1216, 1233 n. 19 (N.D.Tex.1990) (*Choo* was "ambiguous"; majority interpretation "seems unduly restrictive").

■ The problems with limiting the relitigation exception to collateral estoppel are particularly evident in this case. This case began twenty years ago. It was litigated for seventeen years in the United States District Court for the District of Guam, and was appealed to this Circuit no less than four times. One hour after the federal case was settled, the Ulloas filed suit in Guam territorial court. The issues raised in that suit arose from the same contracts and factual circumstances which had been litigated in federal court for the past seventeen years. The federal court was far more familiar with the issues presented than the Guam court could have been. Furthermore, the preclusion issues facing the Guam court were issues of federal law.[11] Under the compelling circumstances of this case, we conclude that the principles announced in *Choo* are not disserved by the district court's injunction. We therefore conclude that the relitigation exception to section 2283 allows the district court to enjoin the Guam litigation on the ground that it is barred by res judicata.

■ Under res judicata, the prior judgment is conclusive "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which

might have been offered for that purpose." *Nevada v. United States,* 463 U.S. 110, 130, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983); *accord Sidney v. Zah,* 718 F.2d 1453, 1458 (9th Cir.1983). David Ulloa's claims, which were actually litigated in federal court, are clearly barred under the principle of res judicata. The only question is whether Richard Ulloa's claim for first refusal rights is also barred.

■ The test for whether a subsequent action is barred is whether it arises from the same "transaction, or series of transactions" as the original action. Restatement (Second) Judgments § 24(1) (cited with approval in *Nevada,* 463 U.S. at 130–31 n. 12, 103 S.Ct. at 2919 n. 12). Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together. Restatement § 24(2).

■ The Ulloas' claim in case no. 24–72 was for the right to repurchase *all* shares of MCS (presumably pursuant to the May 24 agreement). Viewed in this light, Richard Ulloa's right to repurchase *some* shares of MCS asserted in case no. 1223–89 seems part of the same recovery sought in case no. 24–72. Different theories supporting the same claim for relief must be brought in the initial action. *See* Restatement § 25, comment d ("a plaintiff sometimes attempts another action seeking the same or approximately the same relief but adducing a different substantive law premise or ground. This does not constitute the presentation of a new claim …").

■ Richard Ulloa contends that he did not know until "recently" that the rights of first refusal had not been exercised by the other shareholders, and that he therefore could not have asserted those rights in the 1972 proceeding. Ignorance of a party does not, however, avoid the bar of res judicata unless the ignorance was caused by the misrepresentation or concealment of

---

11. The res judicata effect of federal court judgments is a matter of federal law. *Robi v. Five*

*Platters,* 838 F.2d 318, 322 (9th Cir.1988).

the opposing party. Restatement (Second) Judgments § 26 comment j.

■ Even if ignorance were sufficient to avoid the bar, that fact would not aid the Ulloas. Evidence was presented during the federal litigation concerning which stockholders had exercised their rights to purchase MCS stock under ¶ 2. It therefore appears that the Ulloas were on notice of their potential claim for rights of first refusal. Moreover, claims arising from those rights are part of the same "transaction" that was litigated in federal court, and are consequently within the bar of res judicata. Thus, the injunction properly included those claims.

## 2. Equitable Requirements

■ The Ulloas raise three additional objections to the injunction based on traditional principles of equity. First, they contend that the injunction is overbroad because it includes claims assigned to the Ulloas by other shareholders. Both Western's counsel and the district court expressly noted that those claims were not before the court, and were not encompassed within its order. The Ulloas' objection is based solely on what they argue is a possible reading of the district court's order. The district court enjoined the Ulloas from "pursuing the claims asserted by them, *individually,* in the two cases filed in Guam Superior Court." (emphasis added). Reading the order together with the opinion, which states that the assigned claims "were not addressed in the Petition for Injunction, and are not addressed in this opinion," we conclude that the injunction does not apply to the claims of other shareholders and is not overbroad.

■ Second, the Ulloas contend that the principles of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), should preclude injunctive relief here. *Younger*'s "equitable restraint" doctrine, like section 2283, is based in principles of equity, comity, and federalism. While the *Younger* doctrine has been applied to civil proceedings, such applications have been limited to quasi-criminal proceedings, *Juidice v. Vail,* 430 U.S. 327, 335–36, 97 S.Ct.

1211, 1217, 51 L.Ed.2d 376 (1977), or to cases in which the state has a strong interest in enforcing its judgments, *Pennzoil Co. v. Texaco Co.,* 481 U.S. 1, 12–14, 107 S.Ct. 1519, 1526–27, 95 L.Ed.2d 1 (1987). Appellants have cited no case applying *Younger* absent any such state interest. Guam has no such interest here, since there is no significant territorial involvement and no territorial judgment to enforce.

■ Finally, the Ulloas claim that the injunction was inappropriate because Western would suffer no "irreparable injury" by having to bring its res judicata defenses in Guam court. It is true that a showing of irreparable injury is required for a *preliminary* injunction to issue, and no such showing has been made here. However, "when actual success on the merits is shown, the inquiry is over and a party is entitled to relief as a matter of law irrespective of the amount of irreparable injury which may be shown." *Multnomah Legal Serv. Workers Union v. Legal Serv. Corp.,* 936 F.2d 1547, 1553 (9th Cir.1991) (quoting *Sierra Club v. Penfold,* 857 F.2d 1307, 1318 n. 16 (9th Cir.1988)). In this case, the district court issued a permanent injunction after a trial on the merits. The cases appellants cite are inapposite, as they involve either preliminary relief or the separate "irreparable injury" requirement of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Injunctive relief was therefore appropriate under traditional principles of equity.

## 3. Sanctions

■ The district court awarded sanctions to Western in the form of attorneys' fees and costs. The court indicated that sanctions were appropriate because the Guam suits were vexatious, harassing, and filed in bad faith. The court did not explicitly set forth the basis for its fee award. The Ulloas challenge the award of sanctions on multiple grounds.

First, the Ulloas claim that the district court's failure to set forth the underlying basis of the award denied them fair notice

and opportunity for a hearing, and therefore mandates reversal of the award. The Ulloas rely on *Insurance Benefit Admins. v. Martin*, 871 F.2d 1354, 1360–63 (7th Cir. 1989) to support this proposition. *Martin* involved several conflicting claims of statutory authority for sanctions, some of which could support sanctions and others of which could not. The court concluded that the district court's failure to specify the basis for its award made appellate review impossible, and it remanded the claim.

No such problem appears here. Appellees urge this Court to uphold the sanctions as an exercise of the district court's traditional equitable powers. Appellants were clearly on notice of this basis for sanctions, as they briefed it extensively before this court. They also submitted a written brief on the issue to the district court. In addition, the district court judge clearly set forth the reasons he believed sanctions to be appropriate.

■ The Ulloas contend that sanctions are not available under the "inherent powers" of the district court, because those powers were preempted or at least subsumed by Fed.R.Civ.P. 11. The Supreme Court explicitly rejected this theory last year in *Chambers v. Nasco, Inc.*, — U.S. —, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991). The Court held that courts retain the inherent power to sanction bad faith conduct during litigation, and that this power exists independent of Rule 11.

■ The Ulloas next argue that the district court impermissibly sanctioned them for conduct—the filing of the Guam Superior Court cases—which occurred not in federal court, but in Guam court. Here, again, *Chambers v. Nasco, Inc.* is fatal to their contention. There the Supreme Court rejected a challenge to the imposition of sanctions "for conduct before other tribunals." *Id.*, 111 S.Ct. at 2139. The Court held that "[a]s long as a party receives an appropriate hearing, ... the party may be sanctioned for abuses of process occurring beyond the courtroom...." *Id.*

■ The next point raised by the Ulloas has merit, however. It is that they never received "an appropriate hearing," *id.*, and had no proper opportunity in the district court to contest the questions of bad faith and the amount of the sanctions. Our review of the record leads us to agree.

The posture of this case is unusual. The district court granted attorneys' fees at the same time that it granted the injunction. It ordered appellees to file an accounting of their costs and expenses. They did so. On August 16, 1990, the court asked counsel for the Ulloas to discuss the matter while counsel was in court on another matter. On the basis of this "hearing," which fills less than two pages in the record, the court awarded sanctions on September 13, 1990. The next day, the court accepted the Ulloas' brief on attorneys' fees, but treated it as a motion for reconsideration and refused to allow the Ulloas to raise many of the objections that they present to this court.

On this record, we conclude that the Ulloas were not afforded sufficient notice nor given an adequate hearing at which to contest the proposed sanctions. *Cf. Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) ("sanctions ... should not be assessed lightly or without fair notice and an opportunity for a hearing on the record.") We therefore vacate the award of sanctions and remand to the district court for a hearing on the appropriateness and the amount of the sanctions. In light of our remand, we do not reach the other challenges to the sanctions presented by the Ulloas.

■ Finally, appellees seek further sanctions on appeal, pursuant to Fed.R.App.P. 38. Rule 38 provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages." An appeal is frivolous if "the result is obvious and [appellant's] arguments are wholly without merit." *Scott v. Younger*, 739 F.2d 1464, 1467 (9th Cir.1984). The Ulloas presented this court with an unsettled issue of law with regard to the Anti–Injunction Act, and the result we reach today is contrary to that reached by other circuits that have considered the issue. The challenge to the imposition of sanctions for lack of a proper hearing was

meritorious. The results in this case were therefore far from "obvious." We accordingly deny the request for sanctions on appeal.

## CONCLUSION

The injunction against further proceedings in the courts of Guam is affirmed. The award of sanctions against the Ulloas is vacated, and the case is remanded to the district court for a hearing to determine the propriety and amount of sanctions. Appellees shall recover their costs on this appeal. AFFIRMED IN PART; VACATED IN PART, and REMANDED.