**In re Keith D. DECKER, and Paula E. Decker, Debtors.**

**Keith D. Decker, and Paula E. Decker, Plaintiffs.**

**v.**

**Washington Mutual Bank f/k/a Washington Mutual Bank, FA, Long Beach Mortgage Company, and Deutche Bank National Trust Company, Defendants.**

Bankruptcy No. 05–64945–13.
Adversary No. 06–00002.

United States Bankruptcy Court,
D. Montana.

Feb. 6, 2007.

---

M. Penny Leatzow, Kalispell, MT, for Plaintiffs.

Charles Edward Hansberry, Kevin A. Twidwell, Garlington Lohn & Robinson, Missoula, MT, Matthew R. Kolling, Mack-

off Kellogg, Dickinson, ND, for Defendants.

## MEMORANDUM OF DECISION

RALPH B. KIRSCHER, Bankruptcy Judge.

On January 6, 2006, Plaintiffs filed an adversary proceeding complaint against the named Defendants. Defendants filed an answer, doc. no. 6 on April 5, 2006. On September 25, 2006, Plaintiffs, M. Penny Leatzow, of Kalispell, Montana, filed an amended complaint. On November 7, 2006, Defendants, represented by Charles E. Hansberry, filed a motion for summary judgment, doc. no. 33, together with a memorandum in support of their motion for summary judgment, doc. no. 34, and a statement of uncontroverted facts, doc. no. 35. The Court scheduled a trial in this proceeding on March 12, 2007, doc. no. 18. Plaintiffs, on November 15, 2006, filed a motion, doc. no. 39, which this Court granted, doc. no. 40, to extend the time for filing a response to Defendants' motion for summary judgment. On November 27, 2006, Plaintiffs filed their response to the motion for summary judgment, doc. no. 45, which unnecessarily also includes a motion to dismiss Defendants' motion for summary judgment. On December 4, 2006, Defendants filed a reply to Plaintiffs' response. On December 7, 2006, the parties filed a stipulation, doc. no. 49, identifying responsible parties on various counts contained in Plaintiffs' amended complaint if the Court enters judgment against the Defendants. The Court approved the stipulation by order, doc. no. 51, on December 8, 2006.

Plaintiffs filed on October 14, 2005, Washington Mutual Bank, N.A., an objection to the confirmation of Plaintiffs' chapter 13 plan, doc. no. 18. Plaintiffs responded, doc. no. 22, that they were filing an adversary action supposedly against the objecting creditor. The Court denied confirmation of the first chapter 13 plan and sustained the objections filed by the trustee and the objecting creditor. On March 15, 2006, Plaintiffs filed an objection to the proof of claim no. 4 filed by Washington Mutual Bank, N.A. Plaintiffs filed an amended plan and Washington Mutual Bank, N.A. and the trustee filed objections to confirmation. Washington Mutual Bank, N.A. filed a response to Plaintiffs' claim objection and set the matter for hearing. Plaintiffs filed a reply to Washington Mutual Bank, N.A.'s response. Plaintiffs filed another amended plan, which this Court confirmed after the trustee and Washington Mutual Bank, N.A. consented to the amended plan. The Court further ordered that "Debtors' objection, filed March 15, 2006, to Washington Mutual Bank's Proof of Claim shall be heard and determined in conjunction with trial of Adversary Proceeding No. 06/00002." On February 5, 2007, Defendants filed a second motion for summary judgment, doc. no. 52, together with a statement of uncontroverted facts, doc. no. 53. Defendants further filed a motion to transfer jury trial to article III judge, doc. no. 54, on February 5, 2007.

The Court has reviewed the pleadings, the motion for summary judgment, the statement of uncontroverted facts and exhibits, the parties' memorandums, the response, and the reply. The Court is now ready to issue a decision in this proceeding. This memorandum contains the Court's findings of fact and conclusions of law.

For the reasons set forth below, the Court grants the Defendants' motion for summary judgment.

## FACTS

Defendants filed a statement of uncontroverted facts as required by Mont. LBR

7056–1(a)(1). Plaintiffs did not file any Statement of Genuine Issues. Such uncontroverted facts submitted by Defendants are as follows:

1. This bankruptcy proceeding, Case No. 05–64945 (the "2005 Bankruptcy") and related adversary action, Case No. 06–00002, (the "2006 Adversary Action"), are filed by the plaintiff Debtors Keith and Paula Decker (the "Deckers"). *See* Bankr.Voluntary Pet. (2005) (Dkt.# 1) and Adversary Action Compl. (2006) (Dkt.# 26).

2. This is the second bankruptcy and related adversary action filed by the Deckers. On February 15, 2002, the Deckers initiated *In re Decker,* No. 02–50002 (the "2002 Bankruptcy"), and on November 26, 2004, the Deckers filed *Decker v. Deutsche Bank Natl. Trust Co., as Trustee for Long Beach Mortg. Loan Trust 2001–2,* Adversary No. 04–00128 (the "2004 Adversary Action"). *See* Bankr.Pet. (Feb. 15, 2002) (Dkt.# 1), and Adversary Action Compl. (Nov. 26, 2004) (attached as Ex. A (Dkt.# 1)).

3. Both bankruptcies and related adversary actions involve the same mortgage loan with the Defendants. On or about February 13, 2001, the Deckers executed and delivered to LBMCO a Promissory Note secured by a Deed of Trust on their principal residence in Kila, Montana. Or. Def.'s Mot. S.J. in the 2002 Bankruptcy and 2004 Adversary Action (hereinafter the "5/24/05 Order") (May 24, 2005) (attached as Ex. B–2 (Dkt.# 21)).

4. The note was an adjustable rate note and bore a minimum and initial interest rate of 11.5 percent APR. (Ex. B at 2.)

5. On July 18, 2001, the Deckers' note was transferred to LBMT 2001–2, a real estate investment trust. Defs.' Responses Pls.' First Interrogs. Req.

Prod. Nos. 12, 13–14 (Oct. 3, 2006) (attached as Ex. C). Deutsche is the trustee of LBMT 2001–2 and the current beneficiary of the note. (Ex. C; *see also* Ex. B at 2.)

6. Under a separate agreement, LBMCO, an affiliate of WaMu, was to act as the servicer for the loans held by LBMT 2001–2. Defs.' Responses Pls.' First Interrogs. Req. Prod. Nos. 11, 12. (Ex. C.) WaMu acted as a sub-servicer for LBMCO for the Deckers' loan, but, as of July 2006, is the successor in interest to LBMCO. (Ex. C; *see also* Ex. B at 3.)

7. At the closing of their loan in February 2001, the Deckers signed a number of disclosure documents, specifically a Final TILA disclosure statement and a "HUD–1 Settlement Statement." *See* Exs. D and E. The Final TILA disclosure showed the annual interest rate to be charged to the Deckers. (Ex. D.) The HUD–1 disclosed a yield spread premium to be paid to the Deckers' mortgage broker. (Ex. E.)

8. After closing, the Deckers failed to make the required monthly payments on this loan obligation and, as a result, the loan incurred charges for unpaid interest, late fees, foreclosure fees and costs. (Ex. B at 3.) Also, the Defendants had to advance additional sums to pay unpaid real estate taxes and insurance premiums. (Ex. B at 3.)

9. On February 15, 2002, the Deckers, represented by attorneys Gregory Paskell and H. James Oleson, filed the 2002 Bankruptcy. (Ex. B at 3.)

10. Deutsche filed a Proof of Claim in the 2002 Bankruptcy, of which, a total of $2,311.00 in legal fees and costs was written off. (Ex. B at 3.)

11. The Deckers failed to make any payments (either for pre-petition arrearages or on post-petition installments un-

der the note) while the 2002 Bankruptcy was pending. (Ex. B at 3–4.)

12. On November 17, 2004, Deutsche filed a Motion to Modify the Stay in the 2002 Bankruptcy to allow it to foreclose. (Ex. B at 4.)

13. The Deckers, through their attorneys Paskell and Oleson, filed the 2004 Adversary Action nine days later. (Ex. A.) The Complaint in the 2004 Adversary Action alleged various claims, including that Deutsche had generally "engaged in a pattern of deceptions and overreaching with the intention of defrauding the Bankruptcy Court, the Trustee, the Debtors and the Creditors," as well as that Deutsche had engaged in "unfair trade practice[s]" and "made false representations as to the character and legal status of a debt." (Ex. A ¶¶ 15, 19, 23.) The Deckers' Complaint in the 2004 Adversary Action sought both compensatory and punitive damages. (Ex. A at 6.)

14. In discovery in the 2004 Adversary Action, the Deckers admitted that they had entered into—and agreed to the terms of—the Note and Deed of Trust, and that the copies attached by Deutsche to the discovery requests were true and accurate copies of those documents. Pls.' Responses Defs.' First Set Discovery Req. Pls. Req. Admis. Nos. 1–4, 9–12 at 2–4 (Mar. 28, 2006) (attached as Ex. F.) In that discovery, Deutsche also asked the Deckers to identify each and every fraudulent and deceptive act that they allege were committed. (Pls.' Responses Defs.' First Set Discovery Reqs. Pls. Nos. 8, 10 & 13 at 8–10.)

15. On April 15, 2005, Deutsche file a Motion for Summary Judgment on the 2004 Adversary Action. (Ex. B at 6.)

16. About five weeks later, this Court granted Deutsche's motion and dis- missed the 2004 Adversary Action with prejudice. (Ex. B at 6.) The Court also issued a Judgment to that effect the same day. Judm. (May 24, 2005) (attached as Ex. G (Dkt.# 21)). The Deckers did not appeal either the Order or Judgment. *See* generally Docket in 2004 Adversary Action.

17. After the entry of summary judgment and subsequent dismissal of their case, the Defendants moved forward with non-judicial foreclosure of the Deckers' home. In response, the Deckers again had their same attorneys file for bankruptcy protection, this time in the 2005 Bankruptcy. Bankr.Voluntary Pet. (2005).

18. In November, the Deckers filed a Substitution of Counsel, and Penny Leatzow took over as the Deckers' new counsel. Substitution of Counsel (Nov. 29, 2005) (Dkt.# 10).

19. In January 2006, the Deckers initiated the instant 2006 Adversary Action, alleging four causes of action collectively against the Defendants: (1) Fraud; (2) Rescission Based Upon Fraud; (3) Violation of TILA; and (4) Unconscionable Contract and Usury.

## JURISDICTION

Plaintiffs allege and Defendants do not dispute that this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and 1334.

## APPLICABLE LAW

### I. UNCONTROVERTED FACTS

Mont. LBR 7056–1(a)(1) requires the moving party to submit a statement of uncontroverted facts. Defendants filed a five-page statement of facts. Mont. LBR 7056–1(a)(2) requires a party opposing the motion for summary judgment to file a "separate, short, and concise 'Statement of

Genuine Issues', setting forth the specific facts, which the opposing party asserts establishes a genuine issue of material fact precluding summary judgment in favor of the moving party ... together with an opposition brief." Mont. LBR 7056–1(a)(3) provides "[a]ll material facts in the moving party's Statement of Uncontroverted Facts are deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party." Plaintiffs have not filed a Statement of Genuine Issues or otherwise asserted any disputed facts. The uncontroverted facts stated by Defendants are deemed admitted pursuant to Mont. LBR 7056–1(a)(3).

## II. SUMMARY JUDGMENT

Summary judgment is governed by FED. R. BANKR.P. 7056. Rule 7056, incorporating FED.R.CIV.P. 56(c), states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie),* 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide 'N' Dive Corp. (In re Aquaslide 'N' Dive Corp.),* 85 B.R. 545, 547 (9th Cir. BAP 1987)). The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence-using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. If the burden of persuasion at trial would be on the *nonmoving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 330–34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan dissent) (citations omitted). *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102–06 (9th Cir.2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.1986), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986); FED.R.CIV.P. 56(e). *See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.,* 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively

show that a material issue of fact remains in dispute"). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar,* 247 F.3d 986, 997 (9th Cir.2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence. *Aquaslide,* 85 B.R. at 547. All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2509. However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv.,* 809 F.2d at 630 (citing *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id.*

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Elec. Serv.,* 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reason-able jury might return a verdict in its favor based on that evidence. *T.W. Elec. Serv.,* 809 F.2d at 631. In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. In this case as the Statement of Uncontroverted Facts is deemed established as no Statement of Genuine Issues was filed, the Court's inquiry shifts to whether Defendants are entitled to judgment as a matter of law. The Court concludes Defendants are entitled to judgment as a matter of law.

## III. CLAIM PRECLUSION

██ As noted in the above facts, the procedural facts for Plaintiffs' two bankruptcy cases, 02–50002 and 05–64945, and two adversary proceedings, 04/00128 and 06/00002, are remarkably similar. Both bankruptcy cases and adversary proceedings have been filed and prosecuted in this Court. Defendants contend that the summary judgment order and judgment entered in Adv. Pro. 04/00128 trigger the effects of claim preclusion and bars litigation on any subsequent claims arising out of the same set of facts. Plaintiffs contend that this adversary proceeding states a different set of facts and different claims and that the summary judgment in the first adversary proceeding only bars the claims adjudicated in the first summary judgment.

The issue involves "whether the 'General Rule of Bar' and the 'General Rule Concerning Splitting' justifie[s this Court] imposing claim preclusion to reject a new legal theory based on previously-litigated facts." *See George v. City of Morro Bay (In re George),* 318 B.R. 729, 732 (9th Cir. BAP 2004)

██ The res judicata doctrines of claim and issue preclusion regarding judg-

ments are now more commonly referred to by the terms substituted by the *Restatement (Second) of Judgments* ("*Restatement*") of "claim preclusion" for "res judicata" and "issue preclusion" for "collateral estoppel." *Id.* at 733. "Issue preclusion bars relitigation only of issues that have been actually litigated, while the broader brush of claim preclusion may also bar a cause of action that never has been litigated." *Id.* Defendants affirmatively assert as one of its defenses in its answer that "Plaintiffs' claims are barred, in whole or in part, by the doctrines of *res judicata* and claim preclusion." In opposing Defendants' motion for summary judgment based on claim preclusion, Plaintiffs mistakenly confuse claim and issue preclusion and the respective parties' position in the prior adversary proceeding. Federal common law governs the application of claim and issue preclusion in federal courts. *Id.*

In the first adversary proceeding, 04/00128, Plaintiffs alleged the following claims: overstatement of claim; deceptive and false filing of claims for charges to which creditor is not entitled; deception and overreaching with intent to defraud; commission of unfair trade practice; violation of Fair Debt Collection Practices Act; deceptive scheme by overstating claim; violation of F.R.B.P. 9011; and request for payoff balance in excess of amount stated on proof of claim. This Court entered a judgment dismissing all claims with prejudice. "The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.' *See, e.g., Paganis v. Blonstein,* 3 F.3d 1067, 1071 (7th Cir.1993) (noting that 'with prejudice' is an acceptable shorthand for 'adjudication on the merits'); *see also Classic Auto Refinishing, Inc. v. Marino (In re Marino),* 181 F.3d 1142, 1144 (9th Cir.1999); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2373 (1973)."

*Stewart v. U.S. Bancorp,* 297 F.3d 953, 956 (9th Cir.2002).

In the second adversary proceeding, 06/00002, Plaintiffs allege the following claims: fraud; rescission based upon fraud; violation of Truth in Lending Act; and unconscionable contract and usury.

As the facts indicate, the claims alleged in both adversary proceedings arise from a loan transaction dated February 13, 2001. None of Plaintiffs' allegations in the two adversary proceedings arise as a counterclaim. The provisions of *Restatement* § 22 do not apply in allowing· Plaintiff in the second adversary to assert that any new claims are not precluded by the prior judgment. Plaintiff in the two adversary proceedings have affirmatively sought relief as a consequence of the loan transaction dated February 13, 2001.

Plaintiffs argue that *Apaydin v. Citibank Federal Savings Bank (In re Apaydin),* 201 B.R. 716 (Bankr.E.D.Pa.1996), supports their position that this adversary proceeding states a different set of facts and different claims and that the summary judgment in the first adversary proceeding only bars the claims adjudicated in the first summary judgment. In reviewing *Apaydin,* the facts distinguish that case from the case *sub judice.* In *Apaydin,* debtors defaulted on their residential loan with Citibank and it filed a foreclosure suit in State court. The State court entered a foreclosure judgment. Prior to the entry of judgment, debtors, with counsel, discovered a possible Truth in Lending ("TIL") violation. Debtors did not file any counterclaim for the TIL violation. Debtors attempted to stay the foreclosure, but the State court denied the attempt after debtors filed a bankruptcy case days before the State court denied the stay. The bankruptcy filing through the effect of the automatic stay stopped the foreclosure sale. Several months after filing the bankruptcy,

debtors filed an adversary proceeding alleging the TIL violation. Debtors then filed a motion for summary judgment. Citibank responded that debtors adversary proceeding was barred by res judicata and collateral estoppel. The bankruptcy court declined to apply either res judicata or collateral estoppel. Res judicata did not apply as Pennsylvania courts previously ruled that a TIL violation could not be alleged as a counterclaim in a mortgage foreclosure (in personam claim versus in rem claim). Collateral estoppel did not apply as the TIL violation had not been previously litigated between the parties. The bankruptcy court's decision concluded that *Restatement* § 22 and that merger did not apply. In the case *sub judice*, Plaintiffs have initiated both actions in this Court and any new claims have not been asserted as counterclaims.

■ Plaintiffs argue that *State Medical Oxygen & Supply, Inc., v. Am. Med. Oxygen Co.* (1992), 256 Mont. 38, 844 P.2d 100, applies. The Court concludes that *State Medical Oxygen* is distinguishable for two grounds: federal law applies as the judgment in the first adversary proceeding was entered by this Court, not a State court, *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir.1992), and

> [t]he order of dismissal and summary judgment entered by the Cascade County District Court, as to the Medicare/Medicaid customers, was not a final judgment on the merits. It was a partial order. There was no right to immediate appeal absent a determination by the District Court that there was no just reason for delay and a final judgment was entered and certified for appeal. *In re the Marriage of Adams* (1979), 183 Mont. 26, 28, 598 P.2d 197, 198. The order adjudicated "less than all the claims or the rights and liabilities of less than all the parties" and was "subject to

revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Rule 54(b), M.R.Civ.P. Therefore, in a strict sense, and applicable to the case at bar, res judicata does not apply to the decision of a motion.

*State Medical Oxygen and Supply, Inc. v. American Medical Oxygen Co.*, 256 Mont. 38, 43, 844 P.2d 100, 103–104 (Mont.1992).

In the case *sub judice*, Plaintiffs initiated both adversary proceedings and Defendants' defended the first proceeding and obtained a judgment of dismissal with prejudice, and now are defending the second proceeding based on the same loan transaction. Generally, "[u]nder the General Rule of Bar [*Restatement* § 19], a judgment in favor of a defendant ordinarily bars the plaintiff from maintaining another action on the same claim" *George*, 318 B.R. at 735. Exceptions [*Restatement* § 20] do apply to the General Rule of Bar. These exceptions allow another action on the same claim by the plaintiff against the defendant: if the judgment is a dismissal for lack of jurisdiction, for improper venue or for nonjoinder or misjoinder or parties; when a plaintiff agrees to nonsuit or dismissal without prejudice; and when a statute or rule prevents a judgment from being a bar to another action.

■ What claim is barred by claim preclusion? The term "claim" is a term of art under the *Restatement* determined by the "transactional test." *See Restatement* § 24 and *George*, 318 at 735. "This test focuses on the transactional nucleus of operative facts and includes all rights to remedies with respect to all or any part of the 'transaction,' determined pragmatically, out of which the action arose, so long as they could conveniently be tried together." *Id., citing W. Sys., Inc.*, 958 F.2d at 871. A valid and final judgment extinguishes the plaintiff's claim pursuant to the rules

of merger or bar; the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction. *See Restatement* § 24. "Legal theories and remedies not asserted are extinguished." *George,* 318 B.R. at 735, *citing Lindsay v. Beneficial Reins. Co. (In re Lindsay),* 59 F.3d 942, 952 (9th Cir.1995). The General Rule Concerning Splitting extinguishes "a claim asserted by the plaintiff against the defendant even though plaintiff is prepared in the second action ... [t]o present evidence or grounds or theories of the case not presented in the first action, or ... [t]o seek remedies or forms of relief not demanded in the first action." *Restatement* § 25. *See George,* 318 B.R. at 736. Exceptions to this General Rule Concerning Splitting include "an agreement of the parties to split a claim, express authorization of splitting by court in the first action, and limitations on court's authority or jurisdiction in the first action to entertain the full claim." *George,* 318 B.R. at 736. *See Restatement* § 26.

In the applying the foregoing analysis to the facts in this adversary proceeding and the issue previously stated, the court concludes that the claims arising in this adversary proceeding arose out of the "same nucleus of facts" as the claims in the first adversary proceeding. Consequently, the facts for the claims of the second adversary· proceeding are, under the General Rule Concerning Splitting, part of the same transaction that Plaintiff litigated in the first adversary proceeding and therefore a part of the same claim for purposes of the General Rule for Bar. This conclusion is further confirmed "by the fact that a new theory of the case is listed in the *Restatement* as a paradigm example of what is extinguished under the doctrine of claim preclusion. [*Restatement*] § 25(1)." *See George,* 318 B.R. at 738.

As an additional note, the Court concludes that this decision and the separate order and judgment to be issued renders Defendants' second motion for summary judgment and its motion to transfer jury trial to article III judge moot and they are therefore denied.

Based upon the above analysis, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Defendants' motion for summary judgment filed November 7, 2006 is granted, that Plaintiffs' motion to dismiss Defendants' motion for summary judgment is denied; that Plaintiffs' adversary proceeding complaint is dismissed with prejudice; that Plaintiffs' objection to Defendants' proof of claim no. 4 is overruled and Defendants' proof of claim no. 4 is allowed; that the trial in this adversary proceeding scheduled for March 12, 2007, at 9:00 a.m. in Missoula, is vacated; and that the Defendants' second motion for summary judgment and its motion to transfer jury trial to Article III judge are denied as moot.