**APOLLOMEDIA CORPORATION,**
**Plaintiff,**

v.

**Janet RENO, Defendant.**

**No. C–97–346 MMC.**

United States District Court,
N.D. California.

Sept. 23, 1998.

---

William Bennett Turner, Rogers Joseph O'Donnell & Quinn, Michael Traynor, Cooley, Godward, San Francisco, CA, for Plaintiff.

Theodore C. Hirt, Felicia L. Chambers, Samuel Feder, U.S. Department of Justice, Washington, DC, for Defendant.

Before HAWKINS, Circuit Judge, and CHESNEY and ILLSTON, District Judges.

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND DISMISSING COMPLAINT

MICHAEL DALY HAWKINS, Circuit Judge.

### INTRODUCTION

Plaintiff ApolloMedia Corporation ("ApolloMedia") seeks to enjoin enforcement of portions of the Communications Decency Act of 1996 ("CDA") codified at 47 U.S.C. § 223(a)(1)(A)(ii) and 47 U.S.C. § 223(a)(2) on the grounds that the subject provisions, to the extent that they prohibit "indecent" communications made "with an intent to annoy," are impermissibly overbroad and vague, and thus violate the First Amendment of the United States Constitution. ApolloMedia does not challenge the provisions to the extent they regulate "obscene" communications. Defendant Janet Reno, Attorney General of the United States, takes the position that the challenged provisions seek to regulate only "obscene" communications. The threshold issue presented to this Court is whether § 223(a)(1)(A)(ii) and § 223(a)(2) proscribe communications that are "indecent" as opposed to only those that are "obscene." Because we find the provisions regulate only "obscene" communications, the Court does not decide the issue of whether Congress may, under the circumstances addressed in the subject provisions, regulate "indecent" speech made with the "intent to annoy."

### PROCEDURAL HISTORY

On January 30, 1997, ApolloMedia filed in the Federal District Court a complaint for declaratory and injunctive relief and a motion for preliminary injunction. Pursuant to 28 U.S.C. § 2284[1] and § 561(a) of the CDA[2], a three-judge court was convened to hear the cause. Thereafter, hearing on the motion for preliminary injunction was stayed during the pendency in the Supreme Court of *Reno v. ACLU*, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), in which other provisions of the CDA were challenged on constitutional grounds.[3] The Supreme Court decided *Reno v. ACLU* on June 26, 1997, after which this Court set the motion for hearing on October 20, 1997.

At the October 20, 1997 hearing, the parties mutually consented to consolidation of the hearing on the preliminary injunction with the merits. *See* Fed.R.Civ.P. 65(a)(2) ("Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application.").

### BACKGROUND

#### A. The Internet

ApolloMedia has requested, without objection by the government, that this Court take

---

**1.** 28 U.S.C. § 2284(a) provides:

> A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body.

28 U.S.C.A. § 2284(a) (West 1994).

**2.** § 561(a) of the CDA states:

> (a) Three–Judge District Court Hearing. Notwithstanding any other provision of law, any civil action challenging the constitutionality on its face, of this title or any amendment made by this title, or any provision thereof, shall be heard by a district court of 3 judges convened pursuant to the provisions of section 2284 of title 28, United States Code.

Communications Decency Act of 1996, Pub.L. No. 104–104, § 561(a), 110 Stat. 133 (1996).

**3.** *Reno v. ACLU* involved challenges to the constitutionality of 47 U.S.C. § 223(a)(1)(B) and 47 U.S.C. § 223(d). § 223(a)(1)(B) sought to criminalize the use of a telecommunications device to transmit an "obscene or indecent" communication, knowing that the recipient is under eighteen years of age. § 223(d) sought to proscribe the use of an interactive computer service to send to or to display in a manner available to any person under eighteen years of age, any communication which "in context, depicts or describes, in terms patently offensive as measured by contemporary community standards, sexual or excretory activities...." Both provisions were held unconstitutional to the extent that they purported to limit "indecent" speech. 117 S.Ct. at 2350.

judicial notice of the first forty-eight findings of fact by the court in *ACLU v. Reno,* 929 F.Supp. 824, 830–38 (E.D.Pa.1996), which contain a detailed description of the Internet's history, means of accessing the Internet, and methods of communication over the Internet.[4]

### B.   The Plaintiff

ApolloMedia is a Delaware corporation founded in 1994 that has its principal place of business in San Francisco, California. ApolloMedia describes itself as a "multimedia technology company whose business is entirely devoted to computer-mediated communication." The company provides technology-related consulting services, licenses software programs for the management and delivery of information through telecommunications channels, and develops Internet technologies, including sites on the World Wide Web.

As an additional part of its business activities, ApolloMedia writes, develops and produces multimedia content for corporate, educational, and entertainment purposes using computers, modems, and telephone lines to communicate through the World Wide Web its own content and that of its clients and its website visitors. ApolloMedia maintains a website entitled "annoy.com" through which ApolloMedia and visitors to the website communicate strong views using expression that

4.   ApolloMedia requested that the Court also take judicial notice of Findings of Fact 49 through 123, which describe, *inter alia,* restrictions on access to unwanted on-line material, availability of sexually explicit material on the Internet, and obstacles to age verification. The government has objected to this request on relevancy grounds. This Court need not consider these findings of fact to resolve the instant action, and thus declines to take judicial notice thereof.

5.   Annoy.com is organized into four separate sections. The "heckle" section contains articles by authors who take strong, provocative positions on various issues. "Drop-down menus" allow website visitors to construct, from a preselected list of options, anonymous e-mail to public officials or figures named in the articles. Another section, entitled "gibe," is a "threaded message board" which allows visitors to read previously posted messages and to add messages of their own. ApolloMedia does not censor messages left by visitors in the "gibe" section.

ApolloMedia asserts may be considered indecent in some communities.[5]

ApolloMedia states that its "online databases contain some material of social or political value that is sexually explicit or uses vulgar language that some persons in some communities might consider 'indecent.' " ApolloMedia also asserts that "its clients and its site visitors wish freely to be able to criticize public officials and public figures by using whatever language or imagery that seems to them appropriate to the occasion and, whenever they wish, to 'annoy' such persons by getting their attention, upsetting them and making them understand the depth of displeasure with their acts or political positions."

### C.   The Communications Decency Act of 1996

The challenged provisions of the CDA are part of a statute that was originally enacted in 1968, as an amendment to the Communications Act of 1934, to proscribe the use of telephones in the District of Columbia or in interstate or foreign communication to "make any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy or indecent." The purpose of the statute was to make "the use of a telephone (or the granting of such use) for the placing of obscene, abusive or harassing telephone calls ... across State boundary lines or within the District of Columbia a federal crime ...." H.R.Rep. No. 90–1102 at 1915.[6]

The "censure" section enables visitors to send digital postcards through the Internet. The visitor selects a postcard and enters the e-mail address of the intended recipient, the desired message text, and the visitor's name and e-mail address. Annoy.com transfers the postcard to an automatically generated "url" (uniform relay locator) on the annoy.com website and automatically generates an e-mail to the intended recipient which informs him or her that a postcard has been created and provides instructions on how to retrieve the postcard. Finally, the "CDA" (Created and Designed to Annoy) section consists of several pages of commentary and visual images.

6.   As originally enacted, Section 223 provided:

Whoever—
(1) in the District of Columbia or in interstate or foreign communication by means of a telephone—

The telephone harassment provisions of 47 U.S.C. § 223 remained basically unchanged until passage of the CDA in 1996, when the provisions that are the subject of the current motion were promulgated.[7] By the amendments contained in the CDA, the statute was modified to substitute "telecommunications device"[8] for "telephone" and to expand its coverage to the *"transmission* of any comment, request, suggestion, proposal, *image or other communication* which is obscene, lewd, lascivious, filthy or indecent." (emphasis added). The CDA also added an intent requirement, providing that a transmission is proscribed by the statute only if made "with intent to annoy, abuse, threaten, or harass another person . . . ."

## DISCUSSION

### A. Standing

The government argues that ApolloMedia lacks standing because the scope of the subject provisions does not reach beyond ob-

scene communications and ApolloMedia does not intend to engage in obscene communications.

■■■ The doctrine of standing is directed at ensuring that the plaintiff before the court "is a proper party to request an adjudication of a particular issue . . . ." *Flast v. Cohen,* 392 U.S. 83, 100, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). "[A]t an irreducible minimum, [Article III of the Constitution] requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . . .' " *Valley Forge Christian College v. Americans United for the Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)). Moreover, it is required "that the injury 'fairly can be traced to the challenged action' and 'is likely

---

(A) makes any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy or indecent;

(B) makes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten or harass any person at the called number;

(C) makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number;

(D) makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number; or

(2) knowingly permits any telephone under his control to be used for any such purpose prohibited by this section, shall be fined not more than $500 or imprisoned not more than six months or both.

47 U.S.C.A. § 223.

**7.** 47 U.S.C. § 223(a) now provides:

Whoever—

(1) in interstate or foreign communications—

(A) by means of a telecommunications device knowingly—

(i) makes, creates, or solicits, and

(ii) initiates the transmission of, any comment, request, suggestion, proposal, image, or other communication which is obscene, lewd, lascivious, filthy, or indecent, with intent to annoy, abuse, threaten, or harass another person;

(B) by means of a telecommunications device knowingly—

(i) makes, creates, or solicits, and

(ii) initiates the transmission of, any comment, request, suggestion, proposal, image, or other communication which is obscene or indecent, knowing that the recipient of the communication is under 18 years of age, regardless of whether the maker of such communication placed the call or initiated the communication;

(C) makes a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number or who receives the communications;

(D) makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or

(E) makes repeated telephone calls or repeatedly initiates communication with a telecommunications device, during which conversation or communication ensues, solely to harass any person at the called number or who receives the communication;

(2) knowingly permits any telecommunications facility under his control to be used for any activity prohibited by paragraph (1) with intent that it be used for such activity, shall be fined under Title 18, or imprisoned not more than two years or both.

47 U.S.C. § 223(a) (West Supp.1997).

**8.** "Telecommunications device" has been interpreted to apply to modems. *See ACLU v. Reno,* 929 F.Supp. at 828 n. 5.

to be redressed by a favorable decision.'" *Valley Forge*, at 472, 102 S.Ct. at 758 (quoting *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976)). It is insufficient for the plaintiff to allege abstract injury. Rather, the plaintiff must allege that he "has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged statute or official conduct." *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) (citation and internal quotation marks omitted).

■ "When contesting the constitutionality of a criminal statute, 'it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.'" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974)) (bracketed text in original). In order to demonstrate an "actual or threatened injury" in the context of a constitutional challenge to a criminal statute, the plaintiff must establish that he has an "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder ...." *Babbitt*, at 298, 99 S.Ct. at 2309. Once this showing is made, the plaintiff is entitled to bring suit. *See id.*

■ ApolloMedia maintains that it seeks to use a "telecommunications device" to engage in "indecent" communications with an "intent to annoy" and that it also seeks to allow visitors to its websites, including annoy.com, to do likewise. During the course of this litigation, while arguing that the challenged provisions apply not to "indecent" communications but solely to obscenity, the government has never relinquished its right to prosecute ApolloMedia for the former under § 223(a)(1)(A) and § 223(a)(2).[9]

That ApolloMedia's interpretation of the scope of the subject provisions ultimately may be found to be incorrect does not deprive it of standing to challenge their constitutionality. *See Fordyce v. City of Seattle*, 55 F.3d 436, 440 (9th Cir.1995) (holding plaintiff had standing to challenge the constitutionality of a state statute as applied to conduct in which plaintiff intended to engage, where the state's highest court had not determined that the intended conduct fell outside the scope of the statute). ApolloMedia has demonstrated that it has standing to pursue the instant action.

### B. The Declaratory Judgment Act

ApolloMedia has invoked the Declaratory Judgment Act in the instant action, seeking a declaratory judgment that § 223(a)(1)(A) and § 223(a)(2) are unconstitutional, facially and as applied. The propriety of declaratory relief is closely related to the issue of standing. The Declaratory Judgment Act, codified at 28 U.S.C. § 2201, provides, in pertinent part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C.A. § 2201(a) (West 1994).

■ Under 28 U.S.C. § 2001, ApolloMedia must demonstrate an independent basis of

---

9. In the Stipulation and Order of April 4, 1997, the government agreed "not [to] initiate any investigations or prosecutions for the violations by plaintiff of 47 U.S.C. § 223(a)(1)(A) for 'indecent' computer communications it makes or made 'with intent to annoy' until this Court rules on plaintiff's motion for preliminary injunction." The government also agreed "not [to] initiate any investigations or prosecutions for violations ... of 47 U.S.C. § 223(a)(2) for knowingly permitting ... any computer facility under its control to transmit 'indecent' computer communications made 'with intent to annoy'" until this Court rules on plaintiff's motion for preliminary injunction. The government further stated, "[t]his Stipulation and Order shall not affect and shall be without prejudice to either party's position on the standing issue.raised by the defendant." The government has not indicated a willingness to stipulate that ApolloMedia cannot be prosecuted under § 223(a)(1)(A) to the extent that ApolloMedia engages in "indecent" communication with an "intent to annoy" the recipient.

federal jurisdiction over the case. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950). There is no question here that this Court possesses an independent basis for federal jurisdiction in the instant action, since ApolloMedia attacks the constitutionality of a federal statute. *See* 28 U.S.C. § 1331.

■ In addition, ApolloMedia must, pursuant to the language of the statute, demonstrate that an "actual controversy" exists. This statutory requirement codifies the constitutional principle that federal courts may exercise jurisdiction only over actual cases or controversies. *See Steffel* at 458, 94 S.Ct. at 1215. In ascertaining whether an "actual case or controversy" exists, "[t]he basic inquiry is whether the 'conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.' " *Babbitt,* at 298, 99 S.Ct. at 2308 (quoting *Railway Mail Ass'n v. Corsi,* 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945)). The adverse legal interests must be of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). *See also Eureka Fed. Sav. and Loan v. American Cas. Co. of Reading,* 873 F.2d 229, 231 (9th Cir.1989) ("Thus, declaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.") (internal quotation omitted).

■ To establish an actual case or controversy when challenging the constitutionality of a statute, a plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt* at 298, 99 S.Ct. at 2308. *See also Fordyce,* 55 F.3d at 440 ("In cases concerning the constitutionality of a state criminal statute, all that is required for an award of declaratory relief is that the plaintiff show a genuine threat of enforcement of a disputed state criminal stat-

ute.") (internal quotation omitted). As discussed above with respect to standing, ApolloMedia has demonstrated a "realistic danger of sustaining a direct injury" if § 223(a)(1)(A) and § 223(a)(2) are found to proscribe "indecent" communications made with an intent to "annoy." Accordingly, a claim for declaratory relief is properly raised by ApolloMedia.

## C. Injunctive Relief

■ As stated, at the time of the hearing on the preliminary injunction, the parties agreed that consideration of the merits of the action should be consolidated with the hearing on the preliminary injunction. In ruling on a request for injunctive relief, the trial court considers the irreparable injury to the moving party and the inadequacy of legal remedy for such injury. *See Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). With respect to permanent injunctions, however, the party seeking such relief need establish only that he has no adequate legal remedy. "Irreparable injury is required for preliminary injunctions, but once actual success on the merits has been established, 'a party is entitled to relief as a matter of law irrespective of the amount of irreparable injury which may be shown.' " *Continental Airlines, Inc. v. Intra Brokers, Inc.,* 24 F.3d 1099, 1104 (9th Cir.1994) (quoting *Western Sys., Inc. v. Ulloa,* 958 F.2d 864, 872 (9th Cir.1992)). "[Irreparable injury] is only one basis for showing the inadequacy of the legal remedy." *Id.* (quoting Charles A. Wright & Arthur R. Miller, 11 *Federal Practice & Procedure,* § 2944 at 401 (1973)).

■ A showing of irreparable injury nevertheless is one way to establish the absence of an adequate legal remedy. *See id.* Moreover, there exists a strong presumption of irreparable injury in cases involving the infringement of First Amendment rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373–74, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (citing *New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)). Thus, ApolloMedia would be entitled to a perma-

nent injunction upon a showing that enforcement of the CDA provisions at issue here result in "a loss of First Amendment freedoms."

### D. Analysis

■■■ We begin our analysis mindful of the Supreme Court's admonition that, in assessing challenges to the constitutionality of a statute, courts should "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Public Citizen v. U.S. Dept. of Justice,* 491 U.S. 440, 465–66, 109 S.Ct. 2558, 2572, 105 L.Ed.2d 377 (1989) (quoting *Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932)). *See also Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. and Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress").

■■■ In opposing ApolloMedia's motion for preliminary injunction, the government contends that the statutory provisions in question only proscribe obscene speech. Indecent speech which is not obscene falls within the protection of the First Amendment. *See Sable Communications of California, Inc. v. FCC,* 492 U.S. 115, 126, 109 S.Ct. 2829, 2836, 106 L.Ed.2d 93 (1989) ("Sexual expression which is indecent but not obscene is protected by the First Amendment."). On the other hand, the protection of the First Amendment does not extend to obscene speech. *See Roth v. United States,* 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957) ("[O]bscenity is not

within the area of constitutionally protected speech.").[10]

### 1. Statutory Construction—47 U.S.C. § 223(a)(1)(A) [11]

■■■ "A court's objective when interpreting a federal statute is to ascertain the intent of Congress and to give effect to legislative will." *Turner v. McMahon,* 830 F.2d 1003, 1007 (9th Cir.1987) (internal quotation omitted). In interpreting a statute, a court starts with its language. *See Bailey v. United States,* 516 U.S. 137, 144, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995). If the language of the statute is unambiguous, the court should look no further in ascertaining its meaning. *See United States v. Lewis,* 67 F.3d 225, 228 (9th Cir.1995). If the language of the statute is unclear, however, it is appropriate for the court to look to legislative history to ascertain its purpose. *See id.; Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 830–31 (9th Cir.1996).

### a. Language of 47 U.S.C. § 223(a)(1)(A)

■■■ As stated, in construing a statute, the court must start with its language. *Bailey,* at 144, 116 S.Ct. at 506. It is an established rule of statutory construction, however, that when the Supreme Court's interpretation of statutory text is "longstanding" and "settled," "it is not only appropriate but also realistic to presume that Congress was thoroughly familiar with [the Court's] precedents ... and that it expects its enactments to be interpreted in conformity with them." *North Star Steel Co. v. Thomas,* 515 U.S. 29, 34, 115 S.Ct. 1927, 1930, 132 L.Ed.2d 27 (1995) (holding that Congress expected the courts to continue their "longstanding" and "settled" practice

---

**10.** The present test for obscenity was set out by the Supreme Court in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). In *Miller,* the Court framed the test for ascertaining obscenity as "(a) whether 'the average person applying contemporary community standards' would find the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, politi-

cal or scientific value." *Id.* at 24, 93 S.Ct. at 2615 (internal citations omitted).

**11.** Liability under 47 U.S.C. § 223(a)(2), which provides for criminal penalties for those who "knowingly permit[ ] any telecommunications facility under [their] control to be used for any activity prohibited by paragraph (1) with the intent that it be used for such activity" is only established by proving a violation of 47 U.S.C. § 223(a)(1). Therefore, no separate analysis of 47 U.S.C. § 223(a)(2) is required.

of borrowing statutes of limitation from analogous state laws in cases where a federal statute fails to specify a statute of limitation) (internal quotation omitted). *See also Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979) (construing text of Title IX of Education Amendments Act of 1972 as creating private cause of action where courts had interpreted nearly identical language in Title VI as creating a private cause of action and noting, "[i]t is always appropriate to assume that our elected representatives, like other citizens, know the law ..."); *S & M Inv. Co. v. Tahoe Reg'l Planning Agency,* 911 F.2d 324, 326 (9th Cir.1990) ("If the term at issue has a settled meaning, we must infer that the legislature meant to incorporate the established meaning, unless the statute dictates otherwise").

■ Section 223(a)(1)(A) subjects to prosecution those who use telecommunications devices to transmit communications which are "obscene, lewd, lascivious, filthy, or indecent, with intent to annoy, abuse, threaten or harass another person...." In arguing that the meaning of this language is settled, the government relies on cases in which the Supreme Court has construed as referring solely to obscenity what the government characterizes as a "string of words" similar to that employed in § 223(a)(1)(A). The government argues that the Supreme Court's longstanding construction of the "strings of words" at issue in those cases applies equally to the "string of words" in § 223(a)(1)(A).

In a line of cases beginning with *Roth,* 354 U.S. at 476, 77 S.Ct. at 1304, the Supreme Court has read words, which are nearly identical to those employed in § 223(a)(1)(A), to refer solely to "obscenity." In *Roth,* the Supreme Court reviewed a conviction under 18 U.S.C. § 1461 which, at the time, imposed criminal penalties for the knowing use of the

mails to transport every "obscene, lewd, lascivious or filthy book, pamphlet, picture, paper, letter, writing, print or other publication of an indecent character ...." *Id.* at 479 n. 1, 77 S.Ct. at 1306 n. 1.

The appellant in *Roth* argued that the statute was impermissibly vague in that it "[did] not provide reasonably ascertainable standards of guilt and therefore violate[d] the constitutional requirements of due process." *Id.* at 491, 77 S.Ct. at 1312. The Court ruled that, in spite of the broad and imprecise range of terms used to describe prohibited speech, 18 U.S.C. § 1461, if "applied according to the proper standard for judging obscenity, [does] not offend constitutional safeguards against convictions based upon protected material ...." *Id.* at 492, 77 S.Ct. at 1313. The Court found, in effect, that in spite of the range of terms employed in the statute, 18 U.S.C. § 1461 only proscribes obscene speech.

The Supreme Court reaffirmed this construction of 18 U.S.C. § 1461 in *Manual Enterprises, Inc. v. Day,* 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962).[12] Addressing the meaning of the series of words used in the statute, the Court observed that, "[w]hile in common usage the words have different shades of meaning, the statute since its inception has been aimed at obnoxiously debasing portrayals of sex."[13] *Id.* at 482–83, 82 S.Ct. at 1434–35 (footnote omitted). The Court went on to hold that "the statute reaches only indecent material which, as now expressed in *Roth v. United States,* taken as a whole appeals to prurient interest." *Id.* at 484, 82 S.Ct. at 1435 (citations omitted).

Thereafter, in *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), the Supreme Court rejected a vagueness challenge to 18 U.S.C. § 1461, ruling that the terms contained in the series of words were "limited to the sort of patently offensive representations or descriptions of

---

12. At the time *Manual Enterprises* was decided, 18 U.S.C. § 1461 had been amended to proscribe the mailing of "every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance."

13. The Supreme Court noted that lower courts had found that "the words 'indecent, filthy or

vile' are limited in their meaning by the preceding words 'obscene, lewd, lascivious' and that all have reference to matters of sex." *Manual Enterprises,* 370 U.S. at 483 n. 5, 82 S.Ct. at 1435 n. 5 (citing *Flying Eagle Publications, Inc. v. United States,* 273 F.2d 799, 803 (1st Cir.1960)).

that specific 'hard core' sexual conduct given as examples in Miller v. California [sic]." *Id.* at 114, 94 S.Ct. at 2906 (quotation omitted). Therefore, the proscription in 18 U.S.C. § 1461 reached only material that would be deemed obscenity pursuant to the *Miller* decision.

The government's argument is further supported by *United States v. 12 200–ft. Reels of Super 8MM Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), which involved a seizure of film under 19 U.S.C. § 1305(a). The Supreme Court, in strongly worded dicta, stated that if faced with a question as to the vagueness of the words " 'obscene,' 'lewd,' 'lascivious', 'filthy,' 'indecent,' or 'immoral,' as used to describe regulated material in 19 U.S.C. § 1305(a) [14] and 18 U.S.C. § 1462 [15] ... [the Court is] prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in *Miller v. California.*" *Id.* at 130 n. 7, 93 S.Ct. 2665, 93 S.Ct. at 2670 n. 7.

These cases demonstrate that, in the context of print media and film, the Supreme Court has read statutory "strings of words" almost identical to that employed in § 223(a)(1)(A) to proscribe only material constituting obscenity within the meaning of *Miller.* There exist, however, cases decided subsequent to *Hamling* and relied upon by ApolloMedia, in which the Supreme Court has construed "indecent," as used in statutes other than 18 U.S.C. § 1461, to bear a distinct meaning, in spite of its coupling with "obscene."

In *FCC v. Pacifica Foundation,* 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978), the Supreme Court ruled that under 18 U.S.C. § 1464,[16] Congress intended to restrict speech which is "indecent" as separate from "obscene." Pacifica argued that the Court had "construed the term 'indecent' in related statutes to mean 'obscene' as that term was defined in *Miller.*" *Pacifica,* 438 U.S. at 740, 98 S.Ct. at 3035. The Court rejected Pacifica's argument, holding that each term bore a separate meaning. The Court observed that the terms "are written in the disjunctive, implying that each has a separate meaning." [17] *Id.* at 739–40, 98 S.Ct. at 3035. The Court distinguished cases such as *Hamling,* where it had construed statutory language, including the term "indecent," to regulate only "obscenity." *See id.* at 740, 98 S.Ct. at 3035–36 ("In Hamling [sic] the Court agreed ... that § 1461 was meant only to regulate obscenity in the mails; by reading into it the limits set by Miller v. California [sic] ... the Court adopted a construction which assured the statute's constitutionality."). The Court noted that, while the history of § 1461 "revealed a primary concern with the prurient, the [Federal Communications] Commission has long interpreted § 1464 as encompassing more than the obscene." *Id.* at 741, 98 S.Ct. at 3036. Moreover, "[t]he former statute deals primarily with printed matter enclosed in sealed envelopes and mailed from one individual to another; the latter deals with the content of public broadcasts." *Id.*

The Court went on to observe that "[i]t is unrealistic to assume that Congress intended to impose precisely the same limitations on the dissemination of patently offensive mat-

**14.** 19 U.S.C. § 1305(a) provides, in relevant part, that "all persons are prohibited from importing into the United States from any foreign country ... any obscene book, pamphlet, paper, writing ... or other article which is obscene or immoral ...."

**15.** *12 200–Foot Reels* companion case, *United States v. Orito,* 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973) involved a constitutional challenge to a conviction under 18 U.S.C. § 1462. At the time, § 1462 proscribed, in relevant part, the bringing into the United States, or the knowing use of any express company or other common carrier, for carriage in interstate or foreign commerce of "any obscene, lewd, las-

civious, or filthy book, pamphlet, picture, motion picture film, paper, letter, writing, print, or other matter of indecent character ...."

**16.** At the time of the suit, 18 U.S.C. § 1464 provided: "Whoever utters any obscene, indecent, or profane language by means of radio communication shall be fined not more than $10,000 or imprisoned not more than two years, or both."

**17.** In *Pacifica,* the Court defined "indecent" to mean "nonconformance with accepted standards of morality." *Id.* at 440, 98 S.Ct. at 3035.

ter by such different means." *Id.* The Court concluded by stating that because the "First Amendment has a special meaning in the broadcast context ... the presumption that Congress never intends to exceed constitutional limits, which supports Hamling's [sic] narrow reading of § 1461, does not support a comparable reading of § 1464." *Id.* at n. 17.

In *Sable Communications,* 492 U.S. at 115, 109 S.Ct. at 2829, the Supreme Court examined the "dial-a-porn" provisions contained in 47 U.S.C. § 223(b), which prohibited any "obscene or indecent" telephone communication "for commercial purposes to any person," and held the statute unconstitutional to the extent it sought to preclude communications that were indecent as opposed to obscene. *Id.* at 131, 109 S.Ct. at 2839. In *Sable,* however, it was uncontested that, in enacting § 223(b), Congress intended to distinguish between "obscene" and "indecent." The issue in *Sable* was not whether Congress had enacted a total ban on "indecent" communications, but whether such a restriction was justified in order to further a compelling government interest—the protection of minors. *Id.* at 129–31, 109 S.Ct. at 2828–29.

No cases have been cited by the government or ApolloMedia in which a court has considered the meaning of the precise "string of words" found in § 223(a)(1)(A). A review of the above-referenced decisions, however, leads the Court to conclude that the subject language was intended to regulate only obscene communications. First, the "string of words" employed in § 223(a)(1)(A) more closely resembles in both length and syntax the "string of words" used in 18 U.S.C. § 1461, as interpreted in *Roth, Manual Enterprises,* and *Hamling,* than the words at issue in *Pacifica* and *Sable.* Moreover, that interpretation prevailed at the time that the predecessor statute to § 223(a)(1)(A), which employed the same "string of words" as employed in § 223(a)(1)(A), was enacted.[18] Finally, as the *Pacifica* Court noted, the Federal Communications Commission "has long interpreted § 1464 as encompassing more than the obscene." *Pacifica,* 438 U.S. at 741,

98 S.Ct. at 3036. There is no similar history of governmental regulation with respect to § 223(a)(1)(A).

### b. Legislative History

Having concluded that the statutory language resolves the interpretive issue, the Court need look no further. Because both ApolloMedia and the government have addressed at length the statute's legislative history, however, the Court next turns to the legislative history as an additional tool of analysis. In doing so, the Court recognizes that "only the most extraordinary showing of contrary intentions" will justify an interpretation different from that dictated by the statutory language. *See Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984).

■■■ When examining a statute's legislative history for an indication of congressional intent, "a congressional conference report is recognized as the most reliable evidence of congressional intent because it 'represents the final statement of the terms agreed to by both houses.'" *Id.* at 835 (quoting *Dept. of Health and Welfare v. Block,* 784 F.2d 895, 901 (9th Cir.1986)).

Section 223(a) was promulgated in 1968, subsequent to the Supreme Court's decisions in *Roth* and *Manual Enterprises.* As discussed earlier, the legislation was intended to "make[ ] the use of a telephone (or the granting of such use) for the placing of obscene, abusive, or harassing telephone calls ... across State boundary lines or within the District of Columbia a Federal crime ...." H.R.Rep. No. 90–1109, at 1915. There is no indication in the legislative history that the provision was intended to proscribe "indecent" speech that is not "obscene."

The conference report for the CDA contains little direct discussion of § 223(a)(1)(A), except to note that, "an intent requirement is added to section 223(a)(1)(A) that liability is incurred for 'obscene, lewd, lascivious, filthy, or indecent' communications with the intent to 'annoy, abuse, threaten, or harass another

---

**18.** *Roth* was decided in 1957 and *Manual Enterprises* in 1962. Section 223, the predecessor of § 223(A)(1)(A), was enacted in 1968. *Pacifica* and *Sable* were not decided until 1978 and 1989, respectively.

person.'" H.R.Rep. No. 104–458 at 187. The legislative record of the CDA does not state that Congress sought to change the nature of the speech proscribed by the provision.

There follows, however, a detailed discussion of the meaning that Congress attached to the term "indecent" in other provisions of the CDA. In 47 U.S.C. § 223(d)(1), which proscribes the transmission of "patently offensive" communications to recipients under eighteen years of age, it is clear that Congress intended to reach "indecent" programming that is not "obscene." The conference report discussion of this provision states that Congress intended in this provision to "codiff[y] the definition of indecency from *FCC v. Pacifica Foundation* ...." H.R.Rep. No. 104–458 at 187–88. In another section of the CDA, codified at 47 U.S.C. § 223(a)(1)(B), Congress proscribed any communication by means of a telecommunications device that is "obscene or indecent" which is directed at a minor.

In ascertaining congressional intent with respect to the use of specific terms in a statute, the court considers the way the term is used in other provisions of the statute. Presumptively, identical words used in different parts of the same act are intended to have the same meaning. *United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am.*, 508 U.S. 439, 460, 113 S.Ct. 2173, 2185, 124 L.Ed.2d 402 (1993) (quotation omitted). *See also S & M Inv. Co.*, 911 F.2d at 328 ("When the same word or phrase is used in different parts of a statute, we presume that the word or phrase has the same meaning throughout").

ApolloMedia notes that Congress employed the term "indecent" or words defined to mean the same thing as "indecency" in other parts of the CDA to bear a meaning distinct from "obscenity," and argues that "it would be absurd" to ascribe a different meaning to the term "indecent" as used in § 223(a)(1)(A) from the way the term is used in other parts of the CDA. ApolloMedia concludes that Congress must have intended that the word "indecent" in § 223(a)(1)(A) likewise bear a meaning distinct from "obscene."

While the conference report for the CDA discusses at length Congress' intent to limit "indecent" communications, it should be noted that these discussions of the meaning of the term "indecent" are limited to those parts of the report which address the perceived need to protect minors from harmful communications. There is no separate discussion of the meaning of "indecency" with respect to § 223(a)(1)(A) [19] and there is no indication that Congress intended that the term "indecent" should bear the same meaning in § 223(a)(1)(A) as in those provisions of the CDA dealing specifically with communications directed at minors.

It is true that during the CDA floor debates in the Senate, some senators expressed the view that § 223(a)(1)(A) would proscribe the transmission of "indecent" speech over the Internet, and that they were not disabused of that perception.[20] While conference

---

**19.** Likewise, in the floor debates, the statements of the CDA's sponsor and cosponsor indicate that the legislation was intended to limit "indecent" speech to the extent it is directed at minors. For example, Senator Coates explained the purpose of the CDA as follows: "[The CDA] would clean up the Internet. We ban obscenity. And we require that indecency by walled off so children cannot have access." 141 Cong. Rec. S 8333.

**20.** In a speech on the floor of the Senate, Senator Leahy stated concern that § 223(a)(1)(A) "would make it a felony not only to send obscene messages to another person but apply the same penalty to sending an e-mail message with indecent or filthy words that you hope will annoy another person." Cong. Rec. at S. 8331. (June 14, 1995). When the bill's sponsor, Senator Exon, retook the floor, he yielded to another

senator without addressing Senator Leahy's remark. Thereafter, Senator Leahy repeated his concern that § 223(a)(1)(A) "would make it a felony not only to send obscene electronic messages to harass another person, but would apply the same penalty to sending an e-mail message with an indecent or filthy word that you hope will annoy another person." *Id.* at 8342. Senator Exon again took the floor after Senator Leahy spoke but did not indicate that Senator Leahy had misconstrued the scope of the legislation.

Senator Levin also stated, "[t]he language of the amendment before us is so broad and vague that it would subject an American citizen to criminal liability and possible imprisonment for two years, a $100,000 fine or both for making what is termed to be a 'filthy comment' on the Internet which, in the words of the amendment,

reports "are entitled to greater weight than less formal indicia of Congressional intent such as floor debates," *International Telephone and Telegraph Co. v. General Tel. & Electronics Corp.*, 518 F.2d 913, 921 (9th Cir.1975), it is nevertheless the case that "the Supreme Court, far from approving the exclusion of less formal material, has repeatedly interpreted legislation by referring to statements made in floor debates and hearings." *Id.* Therefore, in ascertaining legislative intent, it is appropriate to consider statements made on the floor of the Senate while the CDA was being debated.

The Supreme Court, however, has "often cautioned against the danger, when interpreting a statute, of reliance upon the view of its legislative opponents." *NLRB v. Fruit and Vegetable Packers and Warehousemen Local 760*, 377 U.S. 58, 66, 84 S.Ct. 1063, 1068, 12 L.Ed.2d 129 (1964). As that Court has noted, "[i]n their zeal to defeat a bill, [legislative opponents] understandably tend to overstate its reach." *Id.* In the case of the

present provision, a few senators opined that § 223(a)(1)(A) would proscribe merely "indecent" communications made with an intent to annoy. There is no indication, however, that the CDA's sponsors, or the legislature generally, shared this view, nor does the conference report reflect such an intent on Congress' part.

In determining Congress' intent with respect to any given statute, it also may be instructive to consider the history of related legislation. In addition to amending § 223(a)(1)(A), the CDA amended 18 U.S.C. § 1462 and 18 U.S.C. § 1465 to add "interactive computer services" [21] to the list of entities respectively referenced therein.[22]

Both § 1462 and § 1465 employ a "string of words" nearly identical to the one contained in 18 U.S.C. § 1461 at the time that the Supreme Court ruled in *Roth* that the "string of words" in § 1461 proscribed only obscenity. *See Roth*, 354 U.S. at 492, 77 S.Ct. at 1313 ("obscene, lewd, lascivious or

---

is intended to annoy." *Id.* at 8346. After Senator Levin's remarks, Senator Exon yielded back his time without indicating that the portion of the CDA to which Senator Levin's comments were addressed only proscribed obscenity.

The following day, Senator Moynihan stated, "[t]he language of the amendment is too broad, raising serious questions of constitutionally [sic] under the first amendment. For example, the amendment could reasonably be interpreted to prohibit an individual from sending an annoying e-mail message." *Id.* at 8462. Again, no other senator stated that Senator Moynihan's concern was misplaced because the scope of the provision to which Senator Moynihan referred was limited to obscenity.

**21.** "Interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(e)(2) (West Supp.1997).

**22.** As amended, 18 U.S.C. § 1462 provides, in pertinent part:

Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier or interactive computer service (as defined in Section 230(e)(2) of the Communications Act of 1934), for carriage in interstate or foreign commerce—

(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or ... whoever knowingly takes or receives from such express company or other common carrier or interactive computer service (as defined in Section 230(e)(2) of the Communications Act of 1934) any matter or thing the carriage or importation of which is herein made unlawful—
. . .
shall be fined under this title or imprisoned not more than five years, or both, for the first such offense and shall be fined under this title or imprisoned not more than ten years, or both, for each such offense thereafter.
18 U.S.C.A. § 1462 (West 1984 & Supp.1997).

As amended, 18 U.S.C. § 1465 states, in relevant part:

Whoever knowingly transports or travels in, or uses a facility or means of, interstate or foreign commerce or an interactive computer service (as defined in section 230(e)(2) of the Communications Act of 1934) in or affecting such commerce for the purpose of sale or distribution of any obscene, lewd, lascivious, or filthy book, pamphlet, picture, film, paper, letter, writing, print, silhouette, drawing, figure, image, cast, phonograph recording, electrical transcription or other article capable of producing sound or any other matter of indecent or immoral character, shall be fined under this title or imprisoned not more than five years, or both.
18 U.S.C.A. § 1465 (West Supp.1997).

filthy book, pamphlet, picture, letter, writing, print or other publication of an indecent character....."). Moreover, as noted earlier, in *12 200–Foot Reels,* 413 U.S. at 130 n. 7, 93 S.Ct. at 2670 n. 7, the Supreme Court stated, albeit in dicta, that it was "prepared to construe" the various terms in § 1462, including "indecent," to regulate the type of material defined as obscene in *Miller v. California.*

With respect to § 1462 and § 1465, the conference report for the CDA states that the amendments were intended to "simply clarif[y] that the current *obscenity* statutes, in fact, do prohibit using a computer to import and receive the importation of, and transmission to sell or distribute, *'obscene'* material." H.R. Rep. 104–458 at 193 (emphasis added). The conference report makes clear that the CDA amendments were not intended to extend beyond obscenity the nature of speech proscribed by those two sections. Thus, the CDA's legislative history indicates that when Congress amended § 1462 and § 1465, it intended merely to update those provisions to address new technology. The same could be said of Congress' intent as to § 223(a)(1)(A). The conference report for the CDA with respect to § 223(a) states that the CDA "updates section 223(a) of the Communications Act by using the term 'telecommunications device' as a replacement for or in addition to telephone references in the present law." H.R.Rep. No. 104–458 at 187 (emphasis added).

ApolloMedia argues, however, that because § 1462 and § 1465 have been extended to criminalize obscene Internet communications, § 223(a)(1)(A), if limited in its scope to proscribing obscene speech, would be redundant with respect to such communications. The overlap, however, is by no means complete. The use of a "telecommunications device," as the term is used in § 223(a)(1)(A) is not the equivalent of the use of an "interactive computer service" under § 1462 and § 1465. *See* 47 U.S.C.A. § 223(h)(1)(B) (West Supp.1997) ("For purposes of [§ 223 ... [t]]he use of the term 'telecommunications device' in this section ... does not include an interactive computer service.").

██ ApolloMedia also argues that the inclusion of an intent requirement in § 223(a)(1)(A) ("with intent to annoy, abuse, threaten, or harass another person") casts doubt on whether Congress intended the scope of § 223(a)(1)(A) to be limited to obscenity. It is a "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Village, Inc.,* 503 U.S. 30, 35–36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *see also Bailey,* 516 U.S. at 145, 116 S.Ct. at 506 (stating that courts read statutes "with the assumption that Congress intended each of its terms to have meaning"). ApolloMedia argues that, since it has long been the rule that obscene speech enjoys no constitutional protection, the intent requirement contained in § 223(a)(1)(A) serves no purpose if the statute's scope is limited to obscenity.

The government responds that Congress may have added the intent requirement contained in § 223(a)(1)(A) to avoid the possibility that the statute might be read to unconstitutionally preclude voluntary receipt of obscene communications in one's home. While the Supreme Court has recognized a constitutional right to possess obscenity in one's own home, *Stanley v. Georgia,* 394 U.S. 557, 568, 89 S.Ct. 1243, 1249, 22 L.Ed.2d 542 (1969), the Supreme Court has also held that this right does not imply a right to transport obscenity, even to a willing recipient for private use. *See United States v. Reidel,* 402 U.S. 351, 356, 91 S.Ct. 1410, 1412–13, 28 L.Ed.2d 813 (1971) (holding in the context of a prosecution under 18 U.S.C. § 1461 that *Stanley* did not require the Supreme Court to "fashion or recognize a constitutional right in people ... to distribute or sell obscene materials").

Since case law clearly establishes that Congress may proscribe outright the transmission of obscenity over the Internet, it cannot be assumed that Congress included the intent requirement in § 223(a)(1)(A) because of a perceived problem with the constitutionality of an outright ban on obscene Internet communication.

The CDA's legislative history, however, provides a different explanation for the inclusion of the intent requirement. In his sec-

tion-by-section analysis of the CDA, Senator Exon stated:

> Section 223(a) of the Communications Act is amended to modernize its application to new technologies and to codify Court and FCC interpretations that this section *applies only to communications between non-consenting parties.* This revision would make Section 223(a) Constitutional [sic] on its face. Section 223(a) would become the key federal telecommunications anti-harassment provision.

Cong. Rec. at S. 8091 (June 9, 1995) (emphasis added). This statement of the CDA's sponsor indicates that the purpose of adding an intent requirement was to recognize and ratify prior decisions holding that Congress intended the scope of the provision to be limited to communications between non-consenting parties.

For example, in *Colahan v. New York Telephone Co.,* FCC Op. 84–76 (Mar. 7, 1984), the FCC ruled with respect to the predecessor of § 223(a)(1)(A) that, "[t]he absence of any reference in the legislative history to obscene phone calls between consenting parties leads us to conclude that such messages simply were not within the ambit of Section 223's prohibition." *Id.* at ¶ 16. *See also, United States v. Carlin Communications, Inc.,* 815 F.2d 1367, 1372 (10th Cir. 1987) (*citing Colahan* and holding that § 223(a) does not proscribe obscene phone calls between consenting parties). It thus would appear that, in including an intent requirement in § 223(a)(1)(A), Congress intended no more than to acknowledge prior FCC and court decisions limiting the scope of § 223(a)(1)(A). Read in this light, the intent requirement in § 223(a)(1)(A) is not surplusage but rather clarifies Congress' intent that the statute proscribe only obscene communications between *non-consenting* adults.

In conclusion, it again bears stating that "federal statutes are to be construed so as to avoid serious doubts as to their constitutionality, and that when faced with such doubts the Court will first determine whether it is fairly possible to interpret the statute in a manner that renders it constitutionally valid." *Communications Workers of America v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641,

2657, 101 L.Ed.2d 634 (1988). *See also U.S. ex. rel. Madden v. General Dynamics Corp.,* 4 F.3d 827 (9th Cir.1993) ("[W]e recognize that we are obliged whenever 'fairly possible' to interpret a statute in a manner that renders it constitutionally valid"); *Meinhold v. United States Dept. of Defense,* 34 F.3d 1469, 1476 (9th Cir.1994) ("When the constitutional validity of a statute or regulation is called into question, it is a cardinal rule that courts must first determine whether a construction is possible by which the constitutional problem may be avoided").

In the present case, the government has demonstrated that § 223(a)(1)(A) can be construed in such a manner as to render it constitutionally valid. As explained above, in light of prior case law and statutory history, it is "fairly possible" to read § 223(a)(1)(A) as applying only to "obscene" communications. So construed, the provision would clearly survive constitutional challenge.

## CONCLUSION

ApolloMedia's request for preliminary and permanent injunctive relief and for a declaration that § 223(a)(1)(A)(ii) and (a)(2) violate the First Amendment is hereby DENIED.

**IT IS SO ORDERED.**

ILLSTON, District Judge, Dissenting.

I agree with the majority that the sections of the Communications Decency Act ("CDA") challenged in this case may constitutionally prevent the transmission of obscene communications over the Internet. I disagree, however, with the majority's conclusion that the actual words of the statute—"obscene, lewd, lascivious, filthy, or indecent"—should be read to mean only "obscene." This is a criminal statute which applies to speech on the Internet, an international communication medium expected to have over 200 million users next year. Such a statute should mean exactly what it says, so that users will know what the rules are.

I believe that our approach here should be the same as the approach taken by the Supreme Court in *Reno v. American Civil Liberties Union,* 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). There, the Court

construed the section of the CDA immediately following the section challenged in this case, and found that proscriptions of "obscene or indecent" communications meant just that—proscriptions of communications which were either obscene or indecent. The Supreme Court held that while proscriptions of obscene communications were constitutionally permissible, proscriptions of indecent communications were not, and invoked the severability clause of the statute to sever the words "or indecent" from the statute. I would do the same here.

### A.

As the majority acknowledges, "indecent" speech falls within the protection of the First Amendment. *See Reno v. ACLU*, 117 S.Ct. at 2346 ("[i]n evaluating the free speech rights of adults, we have made it perfectly clear that 'sexual expression which is indecent but not obscene is protected by the First Amendment.'") (quoting *Sable Communications of California, Inc. v. FCC*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989)). The government can regulate such speech, but only if it acts towards compelling ends with means "carefully tailored to achieve those ends." *Sable*, 492 U.S. at 126, 109 S.Ct. 2829. "Obscene" speech, on the other hand, may be "wholly prohibited." *FCC v. Pacifica Foundation*, 438 U.S. 726, 745, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978).

The statutory provision at issue here makes it a crime to transmit an "obscene, lewd, lascivious, filthy, or indecent" communication over the Internet "with intent to annoy." In *Reno v. ACLU*, 117 S.Ct. at 2329, the Court addressed the constitutionality of two provisions of the CDA, one of which—47 U.S.C. § 223(a)(1)(B)—immediately follows the subparagraph challenged by ApolloMedia here. Section 223(a)(1)(B) stated:

> Whoever ... in interstate or foreign communications ... by means of a telecommunications device knowingly (i) makes, creates or solicits, and (ii) initiates the transmission of any comment, request,

suggestion, proposal, image, or other communication which is *obscene or indecent*, knowing that the recipient of the communication is under 18 years of age, regardless of whether the maker of such communication placed the call or initiated the communication ... shall be fined under Title 18, or imprisoned not more than two years, or both.

(emphasis added).

The second provision challenged in the *Reno* case was § 223(d), which provided:

> Whoever ... in interstate or foreign communications knowingly (A) uses an interactive computer service to send to a specific person or persons under 18 years of age, or (B) uses any interactive computer service to display in a manner available to a person under 18 years of age ... any comment, request, suggestion, proposal, image, or other communication that, in context, depicts or describes, in terms *patently offensive* as measured by contemporary community standards, sexual or excretory activities or organs ... shall be fined under Title 18, or imprisoned not more than two years, or both.

(emphasis added).

The Supreme Court held that the CDA's use of the terms "indecent" in § 223(a)(1)(B) and "patently offensive" in § 223(d) [1] violated the First Amendment because the terms were overbroad: "[the terms] lack[ ] the precision that the First Amendment requires when a statute regulates the content of speech." *Reno v. ACLU*, 117 S.Ct. at 2346. It explained that the imprecision of the terms was "of special concern" because of a resulting, "obvious chilling effect on free speech," *id.* at 2344, enhanced by the fact that the CDA is a criminal statute, *see id.* at 2344–45, and the expansive nature of communication over the Internet, *see id.* at 2347.

Of particular importance to the present case is the Supreme Court's analysis of the CDA's use of the term "indecent" in § 223(a)(1)(B). While recognizing that in certain contexts "the governmental interest

---

1. The Court treated the CDA's use of the terms "indecent" and "patently offensive" in these sec-    tions as synonymous. *Reno v. ACLU,* 117 S.Ct. at 2345.

in protecting children from harmful materials" allows for restrictions on speech that is described only as "indecent," *id.* at 2346, the Supreme Court found that the CDA provisions at issue were far too broad to comply with the First Amendment, indeed, "wholly unprecedented." *Id.* at 2347.

After deciding that § 223(a)(1)(B)'s inclusion of the term "indecent" violated the First Amendment, the Court invoked the severability clause of the Telecommunications Act of 1996,[2] of which the CDA is a part, to excise the language "or indecent" from § 223(a)(1)(B). *See id.* at 2350. The Court concluded "[a]s set forth by [§ 223(a)(1)(B) ], the restriction of 'obscene' material [which can be 'banned totally'] enjoys a textual manifestation separate from that for 'indecent' material, which we have held unconstitutional." *See id.*

In light of the *Reno v. ACLU* decision, a statute criminalizing "indecent" speech over the Internet, without careful tailoring toward protecting children from harmful materials or other compelling interest, cannot survive a First Amendment challenge.

### B.

Section 223(a)(1)(A) is not such a statute, according to the majority. Guided by the important principle that courts should avoid constitutional difficulties with statutes if a statutory construction that eliminates such difficulties is "fairly possible," the majority avoids *Reno v. ACLU*'s effect by interpreting § 223(a)(1)(A)'s "string of words"—"obscene, lewd, lascivious, filthy, or indecent"— to prohibit "obscene" communication only. The majority finds support for this interpretation in four early obscenity cases: *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Manual Enterprises,*

*Inc. v. Day*, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962); *United States v. 12 200-ft. Reels of Super 8MM Film*, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

### C.

To determine whether § 223(a)(1)(A) can be fairly read to prohibit obscene speech only, one must begin with the language of the statute. *See Bailey v. United States*, 516 U.S. 137, 144, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Section 223(a)(1)(A) reads:

> Whoever ... in interstate or foreign communications ... by means of a telecommunications device knowingly (i) makes, creates or solicits, and (ii) initiates the transmission of any comment, request, suggestion, proposal, image, or other communication which is *obscene, lewd, lascivious, filthy, or indecent,* with intent to annoy, abuse, threaten, or harass another person ... shall be fined under Title 18, or imprisoned not more than two years, or both.

(emphasis added).[3] By its terms, then, § 223(a)(1)(A) makes either "obscene ... or indecent" communication a crime. Such a literal reading of the statute—that the word "indecent" has a meaning separate from that of "obscene"—is bolstered by the assumption that, particularly when statutory terms describe an element of a criminal offense, "Congress intended each of [the statute's] terms to have meaning." *Bailey*, 116 S.Ct. at 506–07.

To avoid the conclusion that § 223(a)(1)(A) prohibits "indecent" Internet communication "with intent to annoy," and is therefore unconstitutional pursuant to *Reno v. ACLU*,[4]

---

**2.** 47 U.S.C. § 608 reads: "If any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby."

**3.** Section 223(a)(1)(A) differs from § 223(a)(1)(B), the provision addressed in *Reno v. ACLU*, in three ways. First, it adds the adjectives "lewd," "lascivious," and "filthy." Second, the "knowledge" element is replaced with an

"intent to annoy, abuse, threaten, or harass another person" requirement. Third, § 223(a)(1)(A) contains no requirement that the accused know "that the recipient of the communication is under 18 years of age."

**4.** The government's opposition to plaintiff's motion was based entirely on its contention that § 223(a)(1)(A) prohibits "obscene" speech only. No argument was made that a "compelling interest" allows the prohibition of indecent speech, or lewd, lascivious, or filthy speech.

the majority looks to *Roth, Manual Enterprises, 12 200–Foot Reels* and *Hamling* for the proposition that a string of descriptive words including both "obscene" and "indecent" is to be interpreted to mean "obscene" only. These cases offer little support, however. First, the cases were decided before the Supreme Court's First Amendment taxonomy—in particular the legal significance attached to the terms "obscene" and "indecent"—was in place. Only one of these cases—*Hamling*—post-dated the emergence in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) of a discrete legal test for "obscenity." And none of these cases was decided after the term "indecent" received specific treatment under the First Amendment. *See, e.g., Sable,* 492 U.S. at 126, 109 S.Ct. 2829 ("Sexual expression which is indecent but not obscene is protected by the First Amendment . . . ."); *Pacifica,* 438 U.S. at 740 n. 14, 98 S.Ct. 3026 (defining "indecent" to mean "not conforming to generally accepted standards of morality"). Second, as the Supreme Court recently suggested in *Reno v. ACLU,* First Amendment holdings are tied closely to the nature of the medium being regulated. *See* 117 S.Ct. at 2343; *Pacifica,* 438 U.S. at 740, 98 S.Ct. 3026. *Roth, Manual Enterprises,* and *Hamling* dealt with statutes governing the mail, and *12 200–Foot Reels* concerned an import statute.

Additionally, as the majority notes, the Supreme Court in *Pacifica, Sable,* and *Reno v. ACLU* refused to "read out" Congress' inclusion of the term "indecent" in regulations of speech. In *Pacifica,* for example, the argument that the term "indecent" in a statute prohibiting "obscene, indecent, or profane" speech should be interpreted to mean "obscene" was explicitly rejected. *See Pacifica,* 438 U.S. at 739–740, 98 S.Ct. 3026. The Supreme Court relied on the fact that there, as here, the statute's words were "written in the disjunctive, implying that each has a separate meaning." *Id.* at 740, 98 S.Ct. 3026.

These later "strings of words" cases by themselves undermine the claim that there is a "longstanding" and "settled" Supreme Court approach to statutes prohibiting both "obscene" and "indecent" speech. In any event, however, I believe that *Reno v. ACLU* represents the Supreme Court's direction that in this statute, separate words used in the disjunctive are to be separately considered.

Finally, I note that although the Supreme Court declined to decide whether the provisions of the CDA which it examined in *Reno v. ACLU* would have violated the Fifth Amendment, the interpretation urged by the government and adopted by the majority in this case might make § 223(a)(1)(A) unconstitutionally vague in violation of the Fifth Amendment. This is because an Internet user "of common intelligence [will] necessarily guess at [the] meaning and differ as to [the] application," *see Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926), of a statute that says it prohibits "indecent" communication and "lewd," "lascivious," and "filthy" communication, but actually does not. It is also problematic to allow the language "obscene, lewd, lascivious, filthy, or indecent" to stand in § 223(a)(1)(A) when, in the following subparagraph, the Supreme Court has explicitly excised the word "indecent" for being overbroad in violation of the First Amendment.

The present debate over the language of the CDA seems academic until one considers the application of this criminal statute to the Internet, a communication medium being used daily by tens of millions of people in dozens of countries around the world. It is unrealistic to expect these users to know that the words of this statute do not mean what they say, and that the government has promised not to enforce the statute in accordance with its terms. I would therefore find that the challenged section of the statute as written is unconstitutional; but that, as with the sections of the statute considered in *Reno v. ACLU,* the terms other than "obscene" in § 223(a)(1)(A) can be severed from it, "leaving the rest of [the section] standing." 117 S.Ct. at 2350.